YEAGER et al. v. WOODSON et al.
(No. 7948.)

Court of Civil Appeals of Texas. San Antonio.
Feb. 29, 1928.

**1. Vendor and purchaser ⬅➡79—Contract for sale of land held automatically terminated by purchaser's failure to get loan for cash payment.**

Contract for sale of land, providing for cash payment out of loan to be sought by purchaser from federal land bank, return of amount advanced, if title were not accepted as security for loan, execution and delivery of deed, if such payment were made within 10 days after loan was secured, or cancellation of contract at seller's option, if not paid within such time, *held* automatically terminated at seller's option by purchaser's failure to get loan; seller not being required to make conveyance in such case.

**2. Vendor and purchaser ⬅➡334(1)—Purchaser, not demanding refund of advance payment, nor impleading seller in action by latter's grantees, held not entitled thereto.**

Purchaser, not demanding refund of amount advanced on execution of contract providing for return thereof, if title to land were not accepted by bank as security for loan, from which further cash payment was to be made, nor impleading seller in trespass to try title by latter's grantees, *held* not entitled to refund.

**3. Vendor and purchaser ⬅➡232(8)—Title of grantees without notice of grantor's unrecorded contract to sell land to tenant, continuing in possession after termination of contract, held not affected by tenant's rights thereunder.**

Title of grantees, taking without notice of grantor's prior unrecorded contract for sale of land to tenant, who continued in possession, apparently as tenant at will, after termination of contract because of bank's refusal to loan money, from which cash payment was to be made, on ground that title was defective, *held* not affected by any rights of tenant under such contract; his possession not being adverse.

**4. Vendor and purchaser ⬅➡242—Tenant, specially pleading unrecorded contract to purchase land, assumed burden of showing that lessor's subsequent grantees knew of contract.**

Tenant, specially pleading his unrecorded contract to purchase land from lessor as basis of his right to be quieted in title and possession, retained by him after bank's refusal of loan, from which cash payment was to be made, on ground of defective title, assumed burden of showing that vendor's subsequent grantees, suing in trespass to try title and for damages, knew of such contract.

**5. Trespass to try title ⬅➡59—Purchaser, failing to complete deal, and not proving that he made improvements, cannot recover value thereof from vendor's grantees.**

Tenant, making no proof of having made any improvements on land, of which he continued in possession after termination of contract to purchase it from lessor by failure to obtain loan from which cash payment was to be made, cannot recover value of improvements, made in good faith, by way of reconvention in trespass to try title by lessor's subsequent grantees.

**6. Appeal and error ⬅➡692(1)—Defendant waived and abandoned plea, in support of which rejected evidence was offered, by not presenting it by bill of exception.**

Defendant, in trespass to try title, waived and abandoned plea of improvements in good faith by not presenting it by bill of exception showing nature and extent of rejected evidence offered in support thereof.

**7. Appeal and error ⬅➡22—Finality of judgment for appellate purposes held not effected by failure to dispose of question not presented by bill of exception.**

Where defendant in trespass to try title did not present question of improvements in good faith by bill of exception to rejection of evidence offered thereon, court's failure to dispose of such question in judgment does not affect finality thereof as relating to appellate jurisdiction of Court of Civil Appeals.

Error from District Court, Brooks County; Hood Boone, Judge.

Action by Robert E. Woodson, Jr., and another against J. P. Yeager and another, in which named defendant reconvened. Judgment for plaintiffs, and named defendant brings error. Affirmed.

Buchanan & Haigh, of Edinburg, for plaintiff in error.

J. W. Wilson, of Falfurrias, for defendants in error.

SMITH, J. Prior to, and during, the year 1918, Robert E. Woodson owned a certain tract of 120 acres of land in Brooks county. He rented the tract to J. P. Yeager for the crop season of 1918–1919, and again for the season of 1919–1920. In October, 1919, Woodson and Yeager entered into a written contract for the sale of the land by the former to the latter, who was still in possession as a tenant.

It was provided in said contract that, as consideration for the land, Yeager should pay Woodson $30 an acre, on terms of $250 cash upon the execution of that instrument, $750 cash upon execution and delivery of deed, and the balance in specifically described notes. It was further agreed that Yeager should seek a loan of $2,000 from a certain federal land bank, to be secured by the land, and that the $750 cash payment should be made to Woodson out of this loan. It was provided that for this purpose Woodson should furnish an "abstract of title acceptable to said bank," and that, in case the title to said property shall not be accepted by said bank as security for the proposed loan, the $250 advanced by Yeager should be returned to him; that if the loan was secured, and the

cash payment of $750 was paid Woodson within ten days thereafter, he would at once execute and deliver the deed to Yeager, but, if Yeager failed to make that payment within that time, "then the contract at the option of the seller may be canceled, and the payments theretofore made retained by Woodson as liquidated damages, * * * and this contract canceled at once by notice given to the buyer by the seller of his election to cancel the same." It was further provided that Yeager should use "due diligence" in securing the loan, and would be allowed 60 days for that purpose, plus such delays as might occur through no fault of Yeager. Woodson, a resident of Missouri, was represented by an agent in his dealings with Yeager, although he personally executed the contract, which was sent to him for that purpose.

It appears from the record that Yeager continued in possession of the land, and still holds that possession. Woodson furnished an abstract of title for the use of the land bank in making the proposed loan, and Yeager proceeded in pursuance of the contract to apply for that loan. The bank approved the application, but declined to advance the money, on the ground that Woodson's title was defective. When informed of this obstacle, Woodson declined to do anything towards perfecting his title, or meeting the bank's objections thereto, on the ground that the title was good as it stood. Some correspondence ensued between Woodson and Yeager, extending into April, 1921, but nothing was ever done in the matter, and Yeager continued in possession, apparently without complaint from Woodson. In April, 1926, Woodson conveyed the land in controversy to his children, R. E. Woodson, Jr., and Roberta Woodson, and in October following they brought this action in trespass to try title and for damages against Yeager and one Severiano Barrera, Yeager's tenant on the land. The latter defaulted, but Yeager answered at length, with pleas of not guilty and of limitations, and setting up the contract to purchase, and other defenses not necessary to mention here. He also reconvened offering to do equity, and seeking to be quieted in his title and possession, and, in the alternative, alleged improvements in good faith, and prayed for damages therefor.

The cause was tried before the court without a jury, and judgment was rendered adjudicating the question of title in favor of the Woodsons and against the defendants below, and investing the former with, and divesting the latter of, that title, as well as of possession. No disposition was made of the plaintiffs' prayer for the value of improvements, nor, specifically, of his prayer that he be quieted in his title. Yeager alone has appealed, by writ of error.

The case was but meagerly developed in the court below, and plaintiff in error has presented a number of complaints on appeal which he did not raise or preserve in the court below in such manner as to authorize this court to review them. It should be said in justice to them that the attorneys who have presented the case on appeal in behalf of plaintiff in error did not represent him in the trial court.

[1-4] The record shows that, when informed of the refusal of the land bank to make the proposed loan on the land, Woodson refused to meet the bank's objection of the proffered title, and proposed to refund the advance payment of $250 made by plaintiff in error, less the current year's rental, or, in the alternative, to go ahead with the sale and conveyance upon other terms to be agreed upon. Yeager does not appear to have ever replied to this offer, and the negotiations ended. Woodson was not required by his contract to make conveyance in event of a failure to get the loan, and that failure automatically terminated the contract, at Woodson's option. It is true that that event placed upon Woodson the burden of refunding the $250 advanced by Yeager, but the latter does not appear to have ever demanded this refund, and did not implead Woodson, to whom, alone, he could look for that relief. He continued in possession, but the trial court found, upon sufficient evidence, that his use and occupancy of the premises was not such as to give it the character of adverse possession. He was apparently but a tenant at the will of the owner. And whatever rights he had against Woodson by virtue of the contract with him did not affect the title of defendants in error, who, so far as the record shows, had no notice of such contract, which does not appear to have been of record, and plaintiff in error's possession, not being adverse, did not impart knowledge to defendants in error. Plaintiff in error specially pleaded this contract as the basis of his right to recover, and thus assumed the burden of showing defendants in error's knowledge of it. Under the case made, we are of the opinion that the trial court correctly decreed superior title in defendants in error.

[5-7] Plaintiff in error urges a right to recover for the value of improvements in good faith, but he is not in a position to make that contention here, even if it appeared that he had brought himself within the general rule entitling him to that relief, for he made no proof of having made any improvements. It is true he tendered such proof, in a more or less general way, but the court rejected it, and plaintiff in error waived the point by not presenting it by bill of exception, showing the nature and extent of the evidence he desired to offer, so that there is nothing before this court in the matter. Plaintiff in error is therefore in the position of having abandoned his plea of improvements in good faith.

By the same token the failure of the court to dispose of that question in the judgment does not affect the finality of that judgment, as it relates to the jurisdiction of this court. Thompson v. Harmon (Tex. Civ. App.) 152 S. W. 1161; Tenison v. Donigan (Tex. Com. App.) 220 S. W. 362.

In view of the state of the record, the judgment must be affirmed.