## JACKSON v. STEELE.
### No. 1608–6011.

Commission of Appeals of Texas, Section A.
Feb. 15, 1933.

Bonner, Bonner & Childress, of Wichita Falls, for plaintiff in error.

Kilgore & Rogers, of Wichita Falls, for defendant in error.

HARVEY, Presiding Judge.

This suit was brought by the plaintiff in error, J. L. Jackson, Jr., trustee in bankruptcy, to recover of Oliver C. Steele, doing business under the name of Oliver C. Steele Manufacturing Company, the amount of an alleged preferential payment, in the sum of $4,500, made to Steele by the bankrupt corporation, the Wichita School Supply Company. At the trial of the case, the court peremptorily instructed a verdict against the trustee, and judgment was entered accordingly. The Court of Civil Appeals affirmed that judgment [37 S.W.(2d) 762], and the trustee sought and was granted the writ of error.

The facts, so far as need be stated, are substantially as follows:

The School Supply Company was engaged in business at Wichita Falls for a number of years prior to June 18, 1929. On that date, a petition for involuntary bankruptcy was filed against the company, in the federal bankruptcy court at Fort Worth. In its answer to the petition, the company admitted insolvency, and in July, 1929, was duly adjudged bankrupt. On March 30, 1929, the alleged preferential payment was made. At that time the supply company owed Steele an indebtedness of approximately $17,000, which was some two or three years past due. On the last-mentioned date, there were numerous other debts of the company which were past due. During the entire period of some three or four years prior to March 30, 1929, the company, on numerous occasions, failed to pay, when due, debts incurred by the company in carrying on its business of selling school supplies. A large number of those claims, which accrued during that time, were not paid until they had been placed in the hands of an attorney for collection, and a number of them were paid only after suit

thereon was brought. In short, for some three or four years before the filing of the petition in bankruptcy against the company, the latter had been unable to pay its debts as they fell due in the ordinary course of business. Within four months prior to the filing of the petition in bankruptcy, the company paid, in whole or in part, a large number of past-due unsecured claims held by various creditors, besides Steele. The aggregate amount paid on those claims at various times during the four months' period was, in round numbers, $11,464. Steele's place of business was in the state of Indiana, and on March 30, 1929, the payment of $4,500 was made to him there. The payment was made by check, which was promptly met. During the course of some three or four years next preceding the date of the payment, Steele had been doing business with the supply company, in the way of selling goods to the company; and for some time before March, 1929, his business with the company had been conducted on a cash basis. It was shown by the testimony of the witness McMurray, who was an accountant and who had been the office manager for the supply company while the company was a going concern, that the business records of the company reflected that, on March 30, 1929, the assets and liabilities of the company were as follows: Assets—cash on hand, $4,048; merchandise, $16,767; office furniture and fixtures $6,000; notes and bills (mostly school warrants), $49,945; accounts receivable (from customers) $6,305; accounts receivable (for commissions), $16,966; sample accounts, $4,000; judgment against Stafford Manufacturing Company and accrued interest, $19,161. These items aggregate $123,192. The witness, however, gave testimony which tended to show that the fair value of the accounts for commissions was 30 per cent. less than the face value as shown by the company's records. The witness also testified that, allowing for depreciation, the office furniture and fixtures were worth $2,000. This testimony would show the item of commission accounts to amount to $11,876, and the item of office furniture and fixtures to amount to $2,000; and thus show that instead of $123,192, as disclosed by the company records, the aggregate assets of the company on March 30, 1929, amounted to $114,102. It is also shown in testimony that the company owned two automobiles not disclosed by the company's books. The value of these automobiles does not appear. The liabilities of the company, on the date mentioned, as shown by the company's records, were as follows: Unsecured debts: Accounts payable, $38,168; trade acceptances, $14,129. Secured debts (secured by school warrants), $47,369. Total amount of unsecured and secured debts, $99,566. Except as hereinabove stated, there was no testimony to show the nature and amount of the assets of the supply company on March 30, 1929, or the value thereof. The witness did, however, testify to the bald fact that the Stafford Manufacturing Company, against whom the supply company held the judgment hereinabove mentioned, had gone into the hands of a receiver some time prior to March 30, 1929. The grounds for the receivership or the condition of the affairs of the Stafford Manufacturing Company, relative to the value of the judgment mentioned, does not in any wise appear in testimony. The amount and character of the assets of that company, or of its debts, do not appear. What has been said discloses the substance of all testimony that bears on the question which we shall now discuss. No question of fraud is involved in the case.

In order for the payment of the $4,500 by the supply company to Steele to constitute a preference under the Federal Bankruptcy Act (11 USCA § 96), the supply company must have been insolvent at the time the payment was made. With proof of this latter fact lacking, it was the duty of the trial court to instruct a verdict against the trustee. The burden of proof of insolvency of the supply company, at the time mentioned, was on the trustee. 2 Collier on Bankruptcy (14th Ed.) § 60, pp. 1248–1328; 4 Remmington on Bankruptcy (3d Ed.) §§ 1729–1829. "Insolvency," within the meaning of the Bankruptcy Act, is defined in the act as follows: "A person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property * * * shall not, at a fair valuation, be sufficient in amount to pay his debts." 11 USCA § 1(15). It is clear to us that the testimony in this case does not raise the fact issue of the supply company being insolvent, as thus defined, when the payment in question was made. For aught that appears in testimony, the aggregate amount of assets of the company, at a fair valuation, was sufficient to pay the company's debts. There is no testimony at all to show that the aggregate of the company's property, at a fair valuation, was insufficient in amount to pay the debts of the company. The trial court did not err in instructing a verdict against the trustee.

Counsel contends, however, that the trial court erred in excluding from the jury, on the objection of the defendant in error, the testimony of the plaintiff in error, Jackson, to the effect that, after the latter was appointed trustee of the bankrupt estate, he sold the stock of merchandise and office fixtures for $4,000, and the total amount received by him from this source, and from collections on accounts, amounted to $4,893.30; and, except what might be collected from the Stafford Company judgment, nothing further could be collected. Granting that the court erred in excluding this testimony, the error would be harmless. As already shown, no

testimony was adduced which tended to show that the assets of the company, at a fair valuation, were insufficient in amount, on March 30, 1929, to pay the debts of the company. The proffered testimony would not, if same had been admitted in evidence, have raised a fact issue in the last-mentioned respect. Liberty National Bank v. Bear, 265 U. S. 365, 44 S. Ct. 499, 68 L. Ed. 1057.

██ Counsel further insists that the trial court erred in refusing to allow the trustee to testify that, according to the best estimate of the trustee, based "on all information he had," there would be no more than 5 per cent. of the amount of the judgment against Stafford Manufacturing Company collected. The bill of exception relating to this matter is the same bill which relates to the matter disposed of next above. The bill shows that the witness was asked "to state to the jury the amount he had on hand and the amount that came to his hands, whereupon the defendant objected to the same as being immaterial and irrelevant." The objection was sustained. The bill, after reciting what the witness would have testified respecting the sale of stock of merchandise, receipts by the trustee, etc., further recites that the witness would have testified as stated above, regarding the Stafford Company judgment. In the first place, the matter last mentioned was not responsive to the question propounded to the witness; and in the second place, the bill does not disclose the nature or source of the "information" upon which the witness proposed to base his estimate of the amount collectible from the Stafford Company judgment. No error appears in respect of this matter.

█ Still another complaint of the trustee will be noticed. While the witness McMurray was on the witness stand, counsel for the trustee asked him to state, from his knowledge of the condition of the affairs of the supply company, and from the condition of the affairs of the company, as reflected by the business records of the company, whether the company was insolvent when the $4,500 was paid to Steele. The defendant objected to the question because same called for a conclusion of law. The trial court properly sustained the objection. The term "insolvent" has different meanings. As applied in some cases, the term means that a person is unable to pay his debts in regular course of business; whereas the statute, which governs the present case, prescribes an entirely different meaning. If, in a case like the present one, it would ever be permissible for a witness to state his opinion as to the bankrupt being insolvent at the time the alleged preference occurred, it is certain that he should not be permitted to do so unless he first state facts which would themselves disclose such insolvency within the meaning of the statute. Magee v. Paul, 110 Tex. 470, 221 S. W. 254. We do not mean to say that the witness McMurray, in response to proper interrogation, could not have stated his opinion as to the insufficiency, in amount, of the supply company's assets on March 30, 1929, at a fair valuation, to pay the company's debts. That is a matter which we are not called on to consider or decide, and we imply no conclusion in that respect.

We recommend that the judgment of the trial court, and that of the Court of Civil Appeals affirming same, be affirmed.

CURETON, Chief Justice.

Judgments of the district court and Court of Civil Appeals are affirmed, as recommended by the Commission of Appeals.