GULF PAVING COMPANY V. ZERLINE RODGERS LOFSTEDT ET AL.

No. A-509. Decided June 13, 1945.
(188 S. W., 2d Series, 155.)

*Milton J. Mulitz* and *Elbert Roberts,* both of Houston, for petitioners.

The Court of Civil Appeals erred in holding that the trial court should have quashed plaintiff's writ of attachment, because of nonjoinder of parties. House v. House, 183 S. W. 379; Uvalde Rock Asphalt Co. v. Langham, 68 S. W. (2d) 646.

*J. S. Bracewell* and *Fentress Bracewell,* both of Houston, for respondents.

MR. JUDGE SMEDLEY, of the Commission of Appeals, delivered the opinion for the Court.

Petitioner Gulf Paving Company sued Mrs. Zereline Rodgers Lofstedt and her husband, C. J. Lofstedt, to recover the principal and interest, together with reasonable attorney's fees, of a certificate of special assessment issued pursuant to an ordinance of the City of Houston for the improvement of Broadway,

a street in front of a tract of land alleged to be owned by Mrs. Lofstedt and her husband, and for foreclosure of lien securing the certificate. A writ of attachment was issued and levied upon the interests of Mrs. Lofstedt in several lots or tracts of land in Harris County.

Before the case was tried Mrs. Lofstedt died, and, after amendment, the suit proceeded against the surviving husband, C. J. Lofstedt, individually, and as executor and trustee of Mrs. Lofstedt's estate, and against Mr. Lofstedt's two children, Carl Frederick Lofstedt and Carol Ruth Lofstedt.

■ The jury found, in answer to the only issue submitted that Mrs. Lofstedt and her husband did not, prior to February 16, 1939, abandon the property on Broadway in Houston as their residence homestead. The trial court by its judgment denied the foreclosure of an assessment lien on the Broadway property, rendered judgment in favor of the Gulf Paving Company against the defendants, to the extent of the property received by them from the estate of Mrs. Lofstedt, in the amount of $1,618.81, together with $500.00 as attorney's fees, and rendered judgment foreclosing the attachment lien against defendants' interest in the property upon which the attachment had been levied. The Court of Civil Appeals reversed the trial court's judgment and remanded the cause. 185 S. W. (2d) 203.

It was held by the Court of Civil Appeals that defendants' motion to quash the writ of attachment should have been sustained, because the affidavit upon which the writ was issued "did not allege that the attachment was not sued out for the purpose of injuring or harassing the defendant C. J. Lofstedt, but merely stated that it was not sued out for the purpose of injuring and harassing the defendant Zerline Rodgers Lofstedt." In support of its ruling, that court directed attention to the fact that both defendants were alleged to be debtors of the plaintiff and cited Buerger v. Wells, 110 Texas 566, 222 S. W. 151, Perrill v. Kauffman, 72 Texas 214, 12 S. W. 125, and Spencer v. Davis, 298 S. W. 443.

It is our opinion that these authorities do not support the ruling and that the affidavit for attachment was in substantial and sufficient compliance with the statute. Buerger v. Wells, 110 Texas 566, 222 S. W. 151, construed Article 271, Revised Civil Statutes of 1911, now Article 4076, Revised Civil Statutes of 1925. That article provides that a writ of garnishment may be issued when the plaintiff sues for a debt and makes affidavit"

* * * that the defendant has not within his knowledge property in his possession within this State, subject to execution, sufficient to satisfy such debt." In that case Wells sued Buerger as maker and Mrs. Mooney as endorser of certain notes, and garnishment was sued out against an insurance company to reach a certain fund in its hands due Buerger. The affidavit stated that Buerger did not have property in his possession within the state, subject to execution, sufficient to satisfy plaintiff's debt, omitting to negative such ownership of property by the other defendant. It was held that the affidavit was insufficient and should have stated that "the defendants" have not such property, because strangers should not be called into court on a writ of garnishment and subjected to the inconvenience has property within the state from which the plaintiff may make his debt, garnishment not being intended as a remedy for one able to make his debt out of the property of one of his debtors in the suit. It is apparent that the reason for the decision in Buerger v. Wells has no application in the instant case, in which we are concerned with the sufficiency of an affidavit for the issuance of a writ of attachment, which is regulated by a different statute and does not call strangers into court.

In Perrill v. Kauffman, 72 Texas 214, 12 S. W. 125, there were two defendants, W. M.Perrill and P. F. Fox, and on one affidavit a writ was issued commanding the sheriff to attach "the property of W. M. Perrill and P. F. Fox." It was held that the affidavit "that this attachment is not sued out for the purpose of injuring or harassing the defendant" was insufficient and that the motion to quash should have been sustained. The reporter thus accurately states the decision:

"Where there are two defendants and an attachment is sued out against the property of both, the attachment is fatally defective when it fails to state that 'the attachment is not sued out for the purpose of injuring or harassing the defendant.' The use in such case of the word 'defendant' instead of defendants is fatal."

In Gunst v. Pelham, 74 Texas 586, 12 S. W. 233, there were two defendants, and the affidavit, like that in the Perrill case, used the word "defendant" instead of defendants. The court observed that "an attachment was sued out against the property of both defendants" and that the affidavit stated that it was not sued out for the purpose of injuring or harassing "the defendant," cited the Perrill case, and held that the writ should have been quashed. In Spencer v. Davis, 298 S. W. 443, the suit was

against a husband and wife for a community debt. The property attached was their community property, which had been conveyed to the wife in trust for the community. The court held, following the Perrill case, that the affidavit for attachment was fatally defective because the singular "defendant" was used instead of defendants. The text of Corpus Juris Secundum, (Vol. 7, p. 303, Sec. 127), supported by citation of Spencer v. Davis, contains the following statement:

"Where it appears that there are two or more defendants against whom the attachment is sought, the affidavit must negative the existence of improper motive against all of the defendants; and accordingly, a mere statement that the attachment was not sued out to harass defendant is insufficient."

The same construction is given to Perrill v. Kauffman, 72 Texas 214, 12 S. W. 125, and Gunst v. Pelham, 74 Texas 586, 12 S. W. 233, by the opinion written by Chief Justice Gallagher in Lewis v. Daniels, 126 S. W. (2d) 794.

In the instant case, while plaintiff's original petition alleges that both of the defendants, Mrs. Lofstedt and her husband, C. J. Lofstedt, are indebted to plaintiff, attachment was sought against Mrs. Lofstedt. The affidavit for the writ states that Mrs. Lofstedt is indebted to the plaintiff in a certain sum, that she is not a resident of the state, that the attachment is not sued out for he purpose of injuring or harassing Mrs. Lofstedt, and that the plaintiff will probably lose its debt unless the attachment is issued. The attachment bond is payable to Mrs. Lofstedt, and the writ of attachment commands the sheriff to attach so much of the property of Mrs. Lofstedt as shall be of value sufficient to make the debt and the probable cost. The sheriff's return of the writ recites that levy was made on the property described, as the property of Mrs. Lofstedt. The property upon which the levy was made was her separate property.

The statute authorizing the issuance and levy of attachment uses throughout the singular "defendant." Title 13, Articles 275-303, Revised Civil Statutes 1925. Nothing in the statute suggests that attachment may not be issued against one of two or more defendants sued for debt. There is, in our opinion, no good reason for denying to a creditor, suing two or more defendants, the right to procure the issuance of a writ of attachment against the property of one of them. When he does thus seek to attach property of one of the defendants, the affidavit, the bond and the writ properly refer to or designate that defendant. House v. Rouse, 183 S. W. 379.

■ The object of the affidavit is to protect the debtor against an improvident or malicious use of the process, both by an appeal to the conscience of the affiant and by holding up before the affiant the penalties of perjury. Perrill v. Kauffman, 72 Texas 214, 12 S. W. 125. This protection is provided for the defendant against whose property the attachment is sought, and who may suffer injury from the levying of the attachment. The injury that might have been done in this case by the issuance of the writ and the levying of it upon the separate property of Mrs. Lofstedt was injury to her. We conclude, therefore, that the trial court did not err in overruling the motion to quash the attachment on the ground that the affidavit did not allege that it was not sued out for the purpose of injuring or harassing defendants.

The Court of Civil Appeals reversed the trial court's judgment on the further ground that the court erred in striking from the defendants' answer the special defenses alleged in paragraphs VII and VIII and in refusing to admit further evidence to support those defenses. The substance of the defensive allegations is as follows: The area of the proposed paving, a part of Broadway, was one of the most heavily traveled thoroughfares in the state, and the rental value of defendants' property fronting 192.5 feet on Broadway was fifty cents per front foot per month, the chief source of rental being from small establishments serving cold drinks and light lunches to pedestrians and other travelers. Because the principal season for such trade was between April 1 and October 1 of each year, the majority of the property owners protested the beginning of the paving or construction program until the fall of the year. The paving company represented to the city officials and the property owners that the paving would be completed before the season opened and the city accepted the bid of the paving company on December 30, 1938. While the formal contract for the paving was not executed until January 9, 1939, it was agreed that the work should be begun on December 30, 1938, and that the contract should be understood as dating from that time. The contract expressly provided that time was of the essence of the contract, that the work should be completed in one hundred and twenty days, or on or before April 28, 1938, and that the paving company should pay $50.00 per day for each day in which the completion of the work was delayed. The paving company procrastinated and delayed the work, and on or about March 29, 1939, the city unlawfully and arbitrarily undertook to extend the time for the completion of the work for a period of ninety days, or until July 27, 1939. After further delay the city, by

resolution of the council passed June 10, 1939, declared that the paving company had wholly defaulted in its contract, not having pursued it with diligence; but notwithstanding this action, the city council gave the paving company ten days in which to begin the work and on July 20, 1939, unlawfully and arbitrarily undertook by ordinance or resolution to extend the time for the completion of the work for another sixty days, conditioned, however, upon approval of the extension by the PWA authorities. which was never given. The work was not completed until September, 1939. Both of the extensions were made without due regard to the rights of the property owners. While the improvement appears to have been approved and accepted by the city, the approval and acceptance were arbitrary and capricious and without due regard to the rights of the defendants and other abutting property owners. The defendants lost the use and enjoyment of their property, which stood vacant for a period of two months as the proximate result of the said delay. If the work had been prosecuted with diligence, the defendants could and would have rented the frontage of the property for the rent above set forth for the said season and would have made an advantageous contract for the rental thereof over a period of years. It is alleged that by reason of the foregoing facts the paving certificate is void and unenforceable against the estate of Mrs. Lofstedt and against the defendants.

The trial court's judgment recites that exceptions had been filed "to the pleadings of each party" and that it was agreed that rulings on the exceptions might be reserved until the entry of judgment in the cause. The transcript, however, contains no copy of exceptions to the defendants' answer and there is no order either sustaining or overruling exceptions to the answer. By bill of exceptions the following proceedings are shown: During the trial of the case, and while a witness for defendants was testifying, counsel for defendants began to interrogate the witness as to traffic conditions and the character of business done by property owners along the part of Broadway involved in the paving proceedings. Thereupon counsel for plaintiff "objected to all of said matters as being irrelevant, immaterial and constituting a collateral attack on the proceedings of the city council in inauguarating and completing said pavement." The bill of exceptions further shows that the court, after hearing a discussion by counsel of the law applicable to the special defenses set out in the answer, announced that all of said matters of special defense alleged were irrelevant and immaterial, except those as to homestead, that all defensive matters other than that pertaining to the homestead would be stricken from the answer and that

no further testimony would be heard in connection therewith.

■ The court, by striking the special defenses from the answer and refusing to hear further evidence to support them, in effect sustained exceptions or an exception to paragraphs VII and VIII of the defendants' answer. The trial court's action is not evidenced in accordance with the rule of procedure established by the decisions. It has been held by a long line of cases that the court's ruling on the sufficiency of pleadings should be shown by order or judgment entered on the minutes and not by bill of exceptions. Daniel v. Daniel, 128 S. W. 469, application for writ of error refused; Hall v. Williams and Ellis, 267 S. W. 520; Baker Company v. Turpin, 53 S. W. (2d) 154; Merrick v. Street, 91 S. W. (2d) 851, application for writ of error refused; Throckmorton County v. Thompson, 96 S. W. (2d) 826; Lamb v. Bonds & Dillard Drilling Corp., 107 S. W. (2d) 501. The decisions cited were based, in part at least, on District Court Rules 53 and 65 (142 S. W. xxi-xxii) one of which, Rule 65, was brought forward as Rule 304 of Texas Rules of Civil Procedure. While the former Rule 53 was omitted from the new rules, we do not believe that its omission was sufficient to evidence an intention to depart from the practice established by the decisions.

■ The bill of exceptions shows also that the trial court refused to hear further testimony in support of the allegations in paragraphs VII and VIII of the answer. As a bill taken to the part of the ruling which excluded evidence, it should have set out the substance of the evidence that the defendants would have offered. Biggins v. Gulf C. & S. F. Ry. Co., 102 Texas 417, 118 S. W. 125; Edwards v. McGuire, 165 S. W. 477; Yeager v. Woodson, 3 S. W. (2d) 822; Jackson v. Steele (Com. App.) 57 S. W. (2d) 95.

■■ However, since the trial court's judgment will be reversed on other grounds and the cause remanded for trial, we shall express our opinion as to the sufficiency of the defensive pleadings. We agree with the decision of the Court of Civil Appeals that the allegations in paragraphs VII and VIII presented a defense to the suit within the ruling made in Fisher v. L. E. Whitman & Co., 120 Texas 516, 39 S. W. 869, 79 A. L. R. 1095. That case was a suit on a paving certificate. The paving contract fixed no definite time for the beginning of the work and did not make time of the essence of the contract, merely proving that the contractor should prosecute the work with diligence and complete the same within one hundred working days after the commencement thereof. No fraud or bad faith was shown in the

acceptance of the work by the city. The court, after rejecting the contention of the paving company that acceptance of the work by the city is always binding on the property owner when no fraud or bad faith is shown, thus expressed its opinion as to the correct rule:

"In our opinion the correct rule, as applied to the facts of the instant case, is, that where a paving contract between a city and a paving contractor does not make time its essence, and provides no definite time for the work to begin, the acceptance of the work by the city is not final and binding on the property owner, where there has been a changed condition of the property owner, and an unreasonable delay in beginning the work; which delay has resulted injuriously to the property owner, and the paving company has notice of such facts."

Further in the opinion the court expressed the following conclusion:

"It would constitute an abuse of discretion on the part of the city, and the exercise of municipal power in a capricious and arbitrary manner so far as the property owner is concerned, for the city to attempt to bind him to pay a paving certificate, by accepting an improvement after an unreasonable time has elapsed between the making of the contract and the beginning of the work, where in the meantime conditions have changed as regards the rights of the property owner; with the resultant loss to him, and this changed condition was known to the paving company."

The extent of the loss or injury suffered by the defendants in the instant case from the delay in the prosecution and completion of the work under the paving contract is not definitely shown by the allegations, and in other respects the allegations may be wanting in particularity, but in view of the court's decision in Fisher v. Whitham & Co., 120 Texas 516, 39 S. W. (2d) 869, 79 A. L. R. 1095, we believe that the trial court should not have stricken paragraphs VII and VIII from the answer as presenting no defense whatever. In the Fisher case the facts were such that the entire cost of the assessment would fall as a loss on the property owner if he were compelled to pay the assessment, and it was held that the property owner was released from liability to pay the certificate by reason of that loss, caused by the unreasonable delay and the changed condition known to the paving company. In the instant case, if the loss that may have been suffered by the property owner as the direct

result of unreasonable delay on the part of the paving contractor, with knowledge of the facts, does not equal the amount of the assessment, the property owner, having received the benefit of the improvement, would not be released from liability on the paving certificate, but such loss, in our opinion, should be offset or credited against the debt evidenced by the certificate.

The certificate on which the suit is filed provides for the payment of a reasonable attorney's fee, if incurred, and plaintiff's petition alleges that it placed the certificate in the hands of its attorney for suit, agreeing to pay him $500.00 for his services, and that $500.00 is a reasonable fee for the services performed and to be performed. The trial court rendered judgment for $500.00 as attorney's fees, after having refused defendants' request to submit to the jury the issue "What do you find from a preponderance of the evidence is a reasonable attorney's fee to be assessed in favor of plaintiff under all circumstances in this case?"

It was held by the Court of Civil Appeals that the trial court did not err in refusing to submit the issue because "plaintiff proved without dispute, by disinterested witnesses, that $500.00 was reasonable attorney's fees." 185 S. W. (2d) 209.

Two practicing attorneys at law, of long experience, testified for the plaintiff, expressing the opinion that $500.00 would be a reasonable fee. This testimony was given at the beginning of the trial, in answer to questions explaining in general terms the nature of the suit, the services that had been rendered by plaintiff's attorney in preparing the case, the several issues made by the pleadings, including the various defenses involved in the defendants' pleadings, and the probable duration of the trial. The two witnesses were cross examined at leangth and their answers show that there is great latitude in fixing attorney's fees, that several elements must be considered in determining what is a reasonable fee, as the amount involved, the actual services to be performed, the time required for trial, the situation of the parties, and the result obtained. Plaintiff's attorney testified that $500.00 would be a reasonable fee.

■ We cannot agree with the opinion expressed by the Court of Civil Appeals that any finding other than that $500.00 was a reasonable fee would have been arbitrary. The general rule is that it is the province of the jury to determine what is the reasonable value of an attorney's services, and that the jury may take into consideration the facts before them in relation to the

services rendered, as well as the estimates of their value made by attorneys who testified. Hamman v. Willis, 62 Texas 507; Dockery v. Johnson, 299 S. W. 505; Lile v. Sovereign Camp, W. O. W., 100 S. W. (2d) 1033; 5 Am. Jur., Attorneys at Law, Sec. 192, pp. 377-378.

■ This testimony is opinion evidence of expert witnesses, which ordinarily is not conclusive. In discussing and holding erroneous a charge to the jury that they must find the value of the services of an attorney from the testimony of expert witnesses alone, and not by the exercise of their own judgment of the facts on which the opinions of the attorneys were given, the Court, in Head v. Hargrave (105 U. S. 45, 26 L. Ed. 1028, 1029) said:

"It was the province of the jury to weigh testimony of the attorneys as to the value of the services, by reference to their nature, the time occupied in their performance, and other attending circumstances, and by applying to it their own experience and knowledge of the character of such services." See also Southland Life Insurance Company v. Norton (Com. App.) 5 S. W. (2d) 767; Guinn v. Coates, 67 S. W. (2d) 621; Simmonds v. St. Louis B. & M. Ry. Co., 127 Texas 23, 91 S. W. (2d) 332; 7 C. J. S., Attorney and Client, Sec. 191d, pp. 1093-1094; 5 Am. Jur., Attorneys at Law, Sec. 192, pp. 377-378.

There may be cases in which the expert testimony as to the value of an attorney's services is so free from inconsistencies, so thoroughly supported by undisputed facts in evidence, and so clearly in accord with knowledge and experience which the jury must have had and with the information obtained by them on the trial, that the court would be justified in accepting that testimony as conclusive, but in our opinion this is not one of such cases, and the question, on the record made, was one of fact for the jury. The fee of $500.00 was nearly one-half of the principal, $1155.00 of the certificate, on which the suit was brought. The testimony was based in part on an estimate of the time that would be taken for the trial and the difficulties of meeting the many defenses made by the pleadings. The trial was made shorter and simpler when the court, after the testimony of the attorneys was given, struck a number of the defenses from the answer. Further facts and circumstances which would properly have been considered by the jury in appraising the expert testimony were brought out by the cross examination of the expert witnesses.

The brief of the defendants, appellants in the Court of Civil Appeals, contains several assignments of error which arise from

contradictions and a vagueness in some of the provisions of the trial court's judgment. In the first part of the judgment, it is ordered, adjudged and decreed that the plaintiffs recover from the defendants $1618.81, together with $500.00 attorney's fees and that execution issue for its collection. At the conclusion, however, the judgment against the three defendants seems to be limited "to the extent of the value of the property received by them from the estate of Zerline Rodgers Lofstedt." In its brief the plaintiff interpreted the trial court's judgment in its favor to be "a judgment against the estate of Mrs. Zerline Rodgers Lofstedt and a personal judgment against her heirs to the extent of the property received from her, and (we might say further) to the extent of their interest in the property foreclosed under the attachment." It is impossible, however, to determine with certainty from the terms of the judgment as entered whether it is intended that the judgment, to its full extent, be enforced by execution against the three defendants, or that it be enforced against them only to the extent of the value of the property received by them from the estate of Mrs. Lofstedt. And if the latter is intended, for what amount or amounts shall execution be issued against them?

The defendants in their brief, complain of the trial court's judgment, because there is no proof that Mrs. Lofstedt's husband owned any certain interest in the property against which the assessment was made, and without proof that he owned an interest and of the extent thereof no judgment should have been rendered against him; because it was not both alleged and proven that the property was the separate property of Mrs. Lofstedt, and in the absence of such allegation and proof no liability should have been imposed upon her or upon her estate for the improvement, and because the judgment is void for vagueness and indefiniteness in that neither the judgment nor the record furnishes the means of determining the value of the property received by the defendants from Mrs. Lofstedt's estate.

These objections and the contradictions and vagueness of the judgment may be avoided on another trial. In our opinion the undisputed evidence shows that the property against which the assessment was made the separate property of Mrs. Lofstedt; and if personal liability arose on account of the improvement, it was against her and became a debt owed by her estate. Spears v. City of San Antonio, 110 Texas 618, 223 S. W. 166; City of Dallas v. Morris, 120 Texas 181, 36 S. W. (2d) 702.

If on another trial the proof as to the ownership of the property is the same, and judgment for personal liability on account

of the improvement is rendered in favor of the plaintiff, the judgment should provide for its satisfaction out of property, not exempt, that belonged to Mrs. Lofstedt and that may be in the hands of the defendants; and if judgment is rendered against the defendants individually, it should be proportioned according to the property they may have received from Mrs. Lofstedt's estate, and the value thereof should be ascertained and set out in the judgment. Articles 3314, 3464, 3529, Revised Civil Statutes of 1925; Thomas v. Bonnie Bros., 66 Texas 635, 2 S. W. 724; Neyland v. Brammer, 146 S. W. (2d) 261.

We approve that part of the opinion of the Court of Civil Appeals which holds that the record shows no abuse of discretion by the trial court in its refusal to stay the trial of the case on the verified motion of the defendant C. J. Lofstedt, showing that the defendant Carl Frederick Lofstedt had been inducted into the United States Army. Soldiers and Sailors Relief Act of 1940, Title 50, Appendix U. S. C. A., Secs. 520, 521, 523, 524; Boone v. Lightner, 319 U. S. 561, 63 S. Ct. 1223, 87 L. Ed. 1587.

We approve also the disposition made by the Court of Civil Appeals of the defendants' contentions that the assessment and the paving certificate are invalid because of insufficient description of the property, because of failure of the contractor to pave the property immediately on the other side of the street, and because the comptroller of the city of Houston did not join in the paving contract. All of the points presented by the briefs filed in the Court of Civil Appeals have been carefully considered, and in our opinion no reversible errors are shown by them except the contradictory and vague provisions of the trial court's judgment and the error in refusing to submit to the jury the issue as to reasonable attorney's fees, and, subject to what has been said as to the manner in which it is presented, the error in striking paragraphs VII and VIII from the answer.

The judgment of the Court of Civil Appeals reversing the trial court's judgment is affirmed and the cause is remanded to the district court for new trial in a manner consistent with this opinion.

Opinion adopted by the Supreme Court June 13, 1945.