# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 20, 2010

No. 08-40885

Lyle W. Cayce
Clerk

THE OFFSHORE DRILLING CO, and its Interested Underwriters

Plaintiff - Appellant - Cross - Appellee

v.

GULF COPPER & MANUFACTURING CORP

Defendant - Appellee - Cross - Appellant

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before GARWOOD, OWEN, and SOUTHWICK, Circuit Judges.

Leslie H. Southwick, Circuit Judge.

A vessel owned by The Offshore Drilling Company ("TODCO"), was destroyed by fire while berthed at a shipyard owned by contractor Gulf Copper & Manufacturing Corporation. At the time of the fire, Gulf Copper was performing "hot work" on the vessel. In the district court, Gulf Copper sought declaratory relief on the theory that the indemnity provision in its contract with TODCO released Gulf Copper from liability. The district court granted summary judgment for Gulf Copper. On appeal, TODCO contends that genuine issues of material fact exist concerning which party had "control" of the vessel. We find that no disputed fact sufficient to preclude summary judgment appears

No. 08-40885

in the record.  We AFFIRM on this question.  On the separate issue of liability for attorneys' fees, we REVERSE and REMAND.

## I.  STATEMENT OF FACTS

TODCO owned a mobile offshore drilling rig, called a "jack-up rig," that it designated as "THE 256."[1]  Such a rig is on top of a barge that is towed to a site, with the legs of the rig pulled up.  Upon arrival, the legs are jacked down to the floor of the sea, and the drilling platform is raised into the air.  THE 256 had been out of service for some time.  In early 2006, TODCO contracted for its refurbishing prior to being put back into service.

TODCO dealt with a number of contractors on the project.  One of those contractors was Gulf Copper, with whom TODCO contracted to perform "hot work," or welding, to replace corroded steel on the vessel.  Gulf Copper also provided the Galveston dock at which the vessel was berthed for the duration of the work.  During the two months that repairs were made, other contractors with no relation to Gulf Copper were working on site. TODCO managerial employees were also working on the rig throughout this time period.

On the night of May 13, 2006, a fire broke out on THE 256 while hot work was being performed.  The rig sustained serious damage as a result of the fire.  No fact-finding was made prior to judgment about where on the rig the fire started or what caused it.

TODCO brought this action against Gulf Copper in the district court, alleging that Gulf Copper's negligence had caused the fire and that Gulf Copper was liable for breach of contract and under a bailment theory.  Gulf Copper denied that its actions caused the fire, and further defended on the basis that the parties' contract required TODCO to indemnify Gulf Copper.  The relevant language of the contract, which is in Paragraph 5.2(b), is as follows:

---

[1] "THE" is the stock market ticker symbol for TODCO, which may indicate it is a designation used for a variety of purposes – including naming of rigs.

2

> Owner shall indemnify Contractor . . . against any and all losses [to Owner's property] . . . (unless such property is under the control of Contractor at the time at which such loss or damage occurs), which arise from, are incident to, connected with, or result directly or indirectly from the performance of the work . . . .

The district court's analysis centered on the meaning of "control" in the parenthetical phrase. Specifically, the court held that if TODCO could prove that the vessel was under Gulf Copper's control at the time of the fire, Gulf Copper would not be entitled to indemnity from TODCO.

The parties submitted significant evidence addressing the issue of control. TODCO sought to prove Gulf Copper's control of the vessel with these facts: THE 256 had been berthed for two months in Gulf Copper's shipyard before the fire; Gulf Copper continuously performed work on the vessel and controlled access to the shipyard; Gulf Copper employees were engaged in hot work when the fire started; Gulf Copper conducted periodic safety-related "audits" of the vessel; at least one Gulf Copper foreman testified that he "control[led] the work on the rig;" TODCO employees were not specifically directing any of the work occurring at the time of the fire; and Gulf Copper was responsible for maintaining a "fire watch" on THE 256.

Gulf Copper, on the other hand, introduced evidence that a number of other contractors were working on the vessel during the period before the fire, over whom Gulf Copper had no control. TODCO maintained a consistent and dominant presence on the site, and TODCO's "project management team" directed and supervised the contractors on a daily basis. TODCO also provided an intricate security system operated by a TODCO employee, which was designed to monitor the movements of anyone who sought to come on board the vessel. Gulf Copper's evidence purported to show that TODCO controlled the vessel by means of ownership, security, hiring authority, onsite management, movement of the vessel, and control over ingress and egress to the rig.

3

No. 08-40885

In the district court, the parties disputed some of the factual issues. For instance, TODCO contended that none of its employees were on board the vessel the night of the fire, while Gulf Copper maintained that a small TODCO crew was present. Likewise, Gulf Copper insisted that a TODCO employee took control of the site after the fire started, barricading the vessel to prevent further entry. TODCO denied that its employee's action evinced its control over the rig. The evidence also showed that Gulf Copper and TODCO shared some of the same responsibilities on the vessel. Both provided security and safety, and each had its own procedures for assigning and executing work.

The district court granted Gulf Copper's motion for summary judgment. It found the evidence "overwhelming and undisputed" that Gulf Copper did not have control of the vessel at the time of the loss, noting that the contract's wording placed the burden on TODCO to show that it had "transferred or relinquished" control to Gulf Copper sometime prior to the accident. The district court concluded that TODCO had control of the vessel at the time of the fire, and was therefore required to indemnify Gulf Copper for any loss, even assuming Gulf Copper was otherwise responsible for the damage.

In a subsequent order, the district court denied Gulf Copper's request for attorneys' fees. TODCO now appeals the grant of summary judgment to Gulf Copper, while Gulf Copper cross-appeals the district court's refusal to award attorneys' fees.

## II. DISCUSSION

The relief being sought in this case is indemnity by one party to a contract to the other for claims between the parties, not for claims made by a third party. With a few limited exceptions not applicable here, Texas law permits indemnity agreements to apply to claims between the parties. *See Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 208 (Tex. 1999). While some Texas appellate courts have stated that the contracting parties generally do not

4

indemnify each other for their own claims, even those courts acknowledge that a specific contract term overrides that limitation. *See, e.g., Ganske v. Spence*, 129 S.W.3d 701, 708 (Tex. App. – Waco 2004).

The district court stated that there was no dispute that Paragraph 5.2(b) of the contract required TODCO to indemnify Gulf Copper in certain circumstances. The only dispute concerned the control of THE 256 at the time of the damages. A close examination of the arguments in the district court reveals no claim by TODCO that the indemnity provision would not apply to claims between the parties. On appeal, though, TODCO in its reply brief argued that the provision only applied to claims brought by third parties.

This question was not answered by the district court because neither party asked it. Raising it now is too late. Issues not raised in the district court, and certainly issues not raised until appellate reply briefs, are not considered. *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1045 n.6 (5th Cir. 1998).

The indemnity provision applies to claims between the parties. We now need to decide whether the district court properly resolved how it applied.

A.    *Summary judgment in favor of Gulf Copper.*

We review a district court's grant of summary judgment *de novo*. *Mahaffey v. Gen. Sec. Ins. Co.*, 543 F.3d 738, 740 (5th Cir. 2008). A district court should grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). In making this determination, the evidence must be viewed in the light most favorable to the nonmoving party. *Mahaffey*, 543 F.3d at 740.

TODCO presents its allegations of error in four parts: (1) the district court erroneously found that TODCO presented no evidence of Gulf Copper's control of the entire vessel; (2) the court misinterpreted "control," which would have excused TODCO if Gulf Copper had been in control of the entire rig at the time of loss; (3) the district court errantly focused on control of the work, not on

5

control of the rig; and (4) TODCO should not have been assigned the burden of proof to show Gulf Copper was not entitled to indemnity. All of these arguments relate to the evidence and the law on the question of control. Consequently, we consider them together.

The district determined that the relevant inquiry was whether Gulf Copper had obtained "control" over the vessel sufficient to preclude indemnity under the contract. In the district court, both parties implicitly agreed that the "property" to be controlled under the agreement was the rig, THE 256. Even in their original appellate briefs, both parties referred only to "control of the vessel" when marshaling facts in support of their positions.

However, at oral argument and in its post-argument briefs in which we sought a precise explanation of the claim, TODCO recast the pertinent issue. Specifically, TODCO argued that it need only prove that Gulf Copper controlled the portion of the vessel over which the work was being performed when the fire occurred.

Our review of the record reveals that this argument was not made before the district court. Although the parties did argue about the relevance of facts showing one party's control of the "work," neither party argued that liability hinged on control over a specific section of the rig less than the whole. We will not consider an argument asserted for the first time on appeal. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

This marks the second point in our opinion in which we table an argument now being made, and return to the arguments made in the district court. The parties are ably represented and surely are making what in their considered judgment are the best ones. We cannot, though, conclude that a district court erred regarding analysis it was not asked to consider. *See id.* Thus, no purpose is served by considering the new arguments.

No. 08-40885

With these restrictions, we now look to the question of "control" in the contractual indemnity provision. The contract stipulates that Texas law governs. Because the terms are not defined in the contract, Texas law directs that they be given their "plain, ordinary, and generally accepted meaning." *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999). One major dictionary describes "control" as the "power or authority to guide or manage." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 496 (1993). While no Texas court has analyzed "control" in these circumstances, at least one Texas appellate court has applied this definition in a similar context. *See Rendleman v. Clarke*, 909 S.W.2d 56, 60 (Tex. App. – Houston [14th Dist.] 1995). *Rendleman* addressed an issue of premises liability, but its discussion of control is still instructive. Specifically, the *Rendleman* court found that a subcontractor did not control a construction site when multiple other subcontractors were also at work on it, and the contractor performed substantial coordinating functions. *Id*. at 60-61.

Applying the same basic framework, we consider whether there is any genuine issue of material fact supporting TODCO's theory that Gulf Copper exercised the "power or authority to guide or manage" the rig THE 256 as a whole. Although TODCO presents evidence demonstrating Gulf Copper's duties on the vessel, most of these facts pertain only to control over Gulf Copper's specific project. For instance, TODCO notes that Gulf Copper was performing work on the rig the night of the fire, that Gulf Copper maintained a fire watch, and that it had independent safety protocols in place.

The actual work it was performing does not prove Gulf Copper controlled any more than a limited project on the rig. It does not establish that Gulf Copper could guide or manage the vessel. As in *Rendleman*, the evidence showed that TODCO directed and coordinated the bulk of the work performed by the many unrelated contractors also on board.

7

While there was evidence that Gulf Copper controlled access to the shipyard, it is undisputed that TODCO determined who could board the rig and at all times monitored ingress and egress on the vessel. Indeed, TODCO apparently "managed" the daily work conducted on the rig during the reactivation process leading up to the fire. Additionally, Gulf Copper demonstrated that TODCO had safety procedures for the entire rig in addition to Gulf Copper's own precautions.

The Texas Supreme Court has also considered the issue of control in other legal contexts. One example was whether a premises owner "controlled" an independent contractor. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 607-08 (Tex. 2002). The court determined that a party in legal "control" designates the timing and sequence of events concerning the controlled person or object. *Id.* at 609. Here, it is clear that TODCO retained ultimate control over the timing and sequence of activities on THE 256. There is no evidence that Gulf Copper had any input concerning the overall management of the vessel. Accordingly, TODCO "controlled" the vessel under Texas law.

As to control in the present case, some facts are disputed. To preclude summary judgment, though, an issue of fact must be both genuine and material. Fed. R. Civ. P. 56(c)(2). "Only disputes over facts that might affect the outcome of the suit under the governing law will preclude summary judgment." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). The disputed issues of fact here do little more than provide cumulative evidence on the issues we have already discussed.

For example, whether TODCO had a skeleton crew on board the night of the fire neither proves nor disproves its control of the rig as a whole. Similarly, whether a TODCO employee – or any person – barricaded the rig in the moments after the fire does not necessarily speak to "control" at all. These disputes do not affect the outcome. Viewed in the light most favorable to

TODCO, these factual disagreements do not create a material issue of fact concerning control of the vessel.

TODCO had the "power or authority to guide or manage" the rig THE 256. Consequently, TODCO must indemnify Gulf Copper.

B.    *Attorneys' fees to Gulf Copper.*

Gulf Copper alleges two grounds that require an award of attorneys' fees. It first asserts that the following part of the indemnity language in the contract so requires: "Should any claim for loss, damage or expense be raised against any indemnitee . . . [t]he indemnitor shall assume the defense of such claim." Second, Gulf Copper claims that Texas law would require TODCO to pay its fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

We review a district court's discretionary determinations on the amount of an award of attorneys' fees for an abuse of that discretion.  *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 759 (5th Cir. 1996).  However, the interpretation of whether contract language permits fees is a question of law reviewed *de novo*. *Alliance Health Group, LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008).

Gulf Copper's first argument for the award of attorneys' fees is based on contractual language requiring the indemnitor – TODCO, as we have held – to assume the defense of any suit against the indemnitee, Gulf Copper.  The relevant language is in Paragraph 5.2(e), as follows:

> Should any claim for loss, damage or expense be raised against any indemnitee under any provision of this Agreement, the indemnitor shall be promptly informed of same by the party against whom the claim is being made.  No claim shall be settled without the written approval of the indemnitor.  The indemnitor shall assume the defense of such claim.

Texas law requires indemnity agreements to be construed "under the normal rules of contract construction."  *Associated Indem. Corp. v. CAT Contracting Inc.*, 964 S.W.2d 276, 284 (Tex. 1998) (citation omitted).  Therefore,

the "primary concern of courts is to ascertain and to give effect to the intentions of the parties as expressed in the instrument." *Ideal Lease Serv., Inc. v. Amoco Prod. Co., Inc.*, 662 S.W.2d 951, 953 (Tex. 1983) (citations omitted).

Where a provision is unambiguous, we determine the rights of the parties by giving legal effect to the contract as written. *Id.* We have already determined that the responsibility to indemnify, found in Paragraph 5.2(b), applies to suits between the parties. The most fundamental reason is because the point was uncontested in the district court and therefore must remain uncontested now.

The separate section on a duty to defend, Paragraph 5.2(e), requires the indemnitee to give notice of claims to TODCO. That language serves no purpose when the claim is by the indemnitee itself. We do not see fatal ambiguity to arise from that fact. Because the parties agreed (until the appellate reply brief) that the separate indemnity provision would apply to third party claims as well as to claims between the contracting parties, we interpret the provision specifically addressing the processing of such claims in that light. It is true that Paragraph 5.2(e) could have drawn a distinction, and said that *if* the claim is by a third party, that notice must be given. The failure to do so does not make the notice provision surplusage. The notice requirement becomes a provision that applies to some but not all the circumstances in which indemnity may be owed. For others, the notice language is unimportant though technically still applicable.

A contrary interpretation, namely, that indemnity is owed even when the claims are between the contracting parties but attorneys' fees are not, creates a significant interpretive problem. The first sentence in Paragraph 5.2(e) begins this way: "Should any claim for loss, damage or expense be raised against any indemnitee under any provision of this Agreement," the notice to the indemnitor is to be given. In light of the concession that indemnity is owed even between the parties, such a claim would be a "claim for loss . . . against the indemnitee"

10

under Paragraph 5.2(e). Our interpretation makes the required notice useless if the claim is between the parties, though certainly it could be given despite the obvious folly of doing so.  The interpretation TODCO seeks requires adding to the first clause of Paragraph 5.2(e) a significant limitation, namely, that "any claim for loss, damage or expense raised against any indemnitee" actually means only such claims as are not between the parties.  It seems to us such an interpretation does considerably more violence to the structure of the indemnity section than does a holding that the assumption of defense language contains a notice requirement that only has to be employed when it is useful to do so.

Consequently, the indemnitor is to assume the defense of any claim raised "under any provision of this Agreement."  Because Gulf Copper's indemnity claim arose under the contract, it is entitled to the costs of its defense under this provision.

The district court denied attorneys' fees. We REVERSE and REMAND for proceedings consistent with this opinion.  We AFFIRM in all other respects.

08-40885

PRISCILLA R. OWEN, Circuit Judge, dissenting.

I concur in the majority's opinion to the extent it affirms the district court's grant of summary judgment. But I respectfully dissent from the determination that Gulf Copper is entitled to attorneys' fees.

The majority holds that TODCO (as indemnitor) must assume the defense of Gulf Copper (as indemnitee), even though TODCO brought the claim against Gulf Copper. The language of the contract, however, does not support such an interpretation. The relevant contractual provision, ¶5.2(e), states:

> Should any claim for loss, damage or expense be raised against any indemnitee under any provision of this Agreement, the indemnitor shall be promptly informed of same by the party against whom the claim is being made. No claim shall be settled without the written approval of the indemnitor. The indemnitor shall assume the defense of such claim.

It is clear that this provision applies only to claims brought by a third party against an indemnitee. To hold that it also applies to an indemnitor's claim against an indemnitee would render parts of the provision superfluous, contravening an established rule of contract interpretation.[1] For instance, in a situation involving an indemnitor's claim against an indemnitee, there would be no need to inform the indemnitor promptly of the claim or to obtain the written approval of the indemnitor to settle. Moreover, applying the provision in this manner would lead to the absurd result that the indemnitor must defend against the very claim it is making against the indemnitee.

The majority asserts that the parties agreed in this litigation that ¶5.2(e) would apply to claims between the contracting parties, TODCO and Gulf Copper. However, the parties agreed only that another provision of their agreement,

[1] *See Millenium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 342 (5th Cir. 2004) (applying Texas law and explaining that "when ascertaining the intent of parties from written expressions, a court should read all parts of a contract together, ensuring that each provision of such contract are given effect and none are rendered meaningless.").

12

¶5.2(b), governs who is to bear the risk of loss at issue in this suit, namely, the damage to TODCO's vessel caused by a fire that occurred when that vessel was docked at Gulf Copper's yard.  Paragraph 5.2(b) explicitly states that "Owner [TODCO] shall indemnify *Contractor* [Gulf Copper] . . . from and against any and all losses attributable to or on account of, or loss of use of, or damage to property of Owner [TODCO] . . . (unless such property is under the control of Contractor [Gulf Copper] at the time at which such loss or damage occurs). . . ."  In contrast, ¶5.2(e) does not state that it applies to a claim a contracting party may have against the other, and as noted *supra*, its context shows that it should not be applied in this manner.

Accordingly, I would hold that ¶5.2(e) does not apply to a suit between the indemnitor and the indemnitee and thus that TODCO is not required to pay Gulf Copper's attorneys' fees.