HEBERT FARMS, Plaintiff–Appellant

v.

SOUTHERN INSURANCE COMPANY, Defendant–Appellee.

No. 12–30649
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 12, 2012.

Peter Forrestt Caviness, Falgoust, Caviness & Bienvenu, L.L.P., Opelousas, LA, Bruce A. Gaudin, Law Office of Bruce A. Gaudin, Opelousas, LA, for Plaintiff-Appellant.

Jay M. Lonero, Angie Arceneaux Akers, Jennifer Ruth Kretschmann, Esq., Larzelere Picou Wells Simpson Lonero, L.L.C., Metairie, LA, for Defendant-Appellee.

Before REAVLEY, JOLLY, and DAVIS, Circuit Judges.

PER CURIAM: *

In this appeal, we are called upon to interpret a clause in an insurance policy which excludes coverage for the contents of a "rice drying house." Hebert Farms filed a claim for losses under its policy with Southern Insurance Company ("Southern") when its rice was damaged while in storage during the drying process, but Southern denied the claim because its policy does not cover the contents of a rice drying house. Hebert Farms brought suit and the district court found that the clause excluding coverage applied and granted summary judgment in favor of Southern. Hebert Farms appeals, claiming the term "rice drying house" is ambiguous and should be strictly construed in its favor. Finding no error, we AFFIRM for the reasons more fully set forth below.

## I.

Hebert Farms conducts a rice farming operation in St. Landry Parish, Louisiana. It owns five rice bins located on its premises. The rice bins are used for drying harvested rice and storing the rice until it is sold. The cylindrical bins consist of flat floors, pitched roofs, and walls. Each bin has two electric fans on it to circulate air into the bin for the purpose of "drying" or removing the moisture in the rice.

During an unknown date in the fall of 2009, after the rice crop had been harvested and placed into the rice bins for drying and storage, three of the electrical fans stopped operating. When this was discovered, Hebert Farms had the fans repaired by an electrician.

Hebert Farms contracted with Bunge Corporation to sell its rice crop for $13 per hundred weight. However, when the rice was delivered, it was rejected by Bunge Corporation because it was stained or "stack burned." Staining diminishes the value of the rice and occurs when there is excessive moisture and heat in the rice such that the pigment in the rice hull bleeds and discolors the rice seed. Because the rice was stained, Hebert Farms had to sell the rice at a price lower than the contract price and incur additional hauling costs. Hebert Farms alleged losses of $238,348.71.

Southern issued Farmowner's Policy No. RRFR159941443 to Hebert Farms for the period of August 28, 2009 to August 28, 2010. The Coverage Schedule and Declarations portion of the policy describes "Coverage E–Farm Barns, Buildings, and Structures" as including "5 Grain Tanks." The policy additionally provides, in relevant part:

Coverage F—Scheduled Farm Personal Property

"We" cover the classes or items of farm personal property for which a "limit" is

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

shown on the "declarations". Coverage applies while property is on the "insured premises".

. . . .

7. Grain— When a "limit" is shown on the "declarations" for Grain, "we" cover grain. This includes threshed beans, silage, ground feed, and manufactured and compounded stock foods in buildings, structures, sacks, wagons, or trucks.

. . . .

PROPERTY NOT COVERED UNDER COVERAGES E, F, OR G

"We" do not cover:

. . . .

5. *the contents of a* rice warehouse, *rice drying house,* cotton gin building belonging to a cotton gin plant or located on gin premises, or machinery, equipment, vehicles or implements that are part of these operations. . . .

(emphasis added).

Hebert Farms sought coverage under Coverage E for "Farm Barns, Buildings, and Structures"—which lists "5 Grain Tanks" among covered property—and the "Perils" section of the policy, which covers "direct physical loss" to property covered under Coverage E. Southern denied coverage on the grounds that the alleged loss is explicitly excluded by the "Property Not Covered Under Coverages E, F, or G" section of the policy which excludes the contents of a "rice drying house." The district court found the term "rice drying house" unambiguously refers to an on-premise structure used for drying rice and granted summary judgment in favor of Southern. Hebert Farms now appeals from that judgment.

## II.

We review a district court's grant of summary judgment *de novo,* viewing all disputed facts and inferences in the light most favorable to the non-movant. *Rockwell v. Brown,* 664 F.3d 985, 990 (5th Cir.2011). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(a). In cases involving named perils insurance coverage, "it is the burden of the insured to prove the incident falls within the policy's terms. On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy." *Doerr v. Mobil Oil Corp.,* 2000–0947, p. 5 (La.12/19/00); 774 So.2d 119, 124 (citation omitted).

## III.

This is a diversity case, so we apply Louisiana substantive law. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Louisiana law, an insurance policy is a contract and should be construed according to the general rules of contract interpretation set forth in the Civil Code. *Riverwood Int'l Corp. v. Emp'rs Ins. of Wausau,* 420 F.3d 378, 382 (5th Cir.2005); *see* LA. CIV.CODE ANN. arts.2045–2048. While an "ambiguous contractual provision is to be [strictly] construed against the insurer and in favor of coverage," this "strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations." *Sher v. Lafayette Ins. Co.,* 2007–2441, p. 5 (La.4/8/08); 988 So.2d 186, 193. Further, where the words of a contract are clear and lead to no absurd consequences, no further interpretation is necessary to determine the parties' intent. LA. CIV.CODE ANN. art.2046. The words and phrases used in an insurance policy are to be construed using their plain, ordinary, and generally prevailing meaning unless the words have acquired a technical meaning. *Id.* art.2047.

Here Hebert Farms argues the "rice drying house" provision cannot exclude coverage because the term is ambiguous

and not defined by the policy. It claims an alternate reasonable interpretation is that the policy would cover "privately owned grain of an insured located on an insured's premises, but it will not cover the grain of other persons contained in commercial facilities on the insured's premises." Further, it argues because its "5 Grain Tanks" are specifically listed in the Coverage Schedule of the Declarations page as covered property, the policy cannot exclude these tanks from coverage in another section. Finally, Hebert Farms points to the fact that the rice drying bins are cylindrical in shape, and therefore they do not comport with what one would ordinarily consider a "house." [1]

While Southern acknowledges a "rice drying house" is not expressly defined by the policy, it argues the term should be given its ordinary prevailing meaning and cannot be construed to mean anything other than a structure where rice is dried. Southern argues the bins are structures existing for the purpose of drying rice, and under the policy, the contents of the bins-the rice itself-is expressly not covered.

We agree with Southern. While the term "rice drying house" is not expressly defined in the policy, the fact that "a term is not defined in the policy itself does not alone make that term ambiguous." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 207 (5th Cir.2007). To construe this term, we must look to its plain, ordinary, and generally prevailing meaning and the

ordinary meaning of "house" is simply a structure or building that houses something.[2] If we were to credit Hebert Farms's interpretation that the clause encompasses privately owned grain of an insured located on an insured's premises but does not cover the grain of other persons contained in commercial facilities on the premises, we would "create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent." *Cadwallader v. Allstate Ins. Co.*, 2002–1637, pp. 3–4 (La.6/27/03); 848 So.2d 577, 580.

Here the "5 Grain Tanks," as they are referred to elsewhere in the policy, are structures being used for housing rice while the rice is being dried; thus, under the plain and ordinary meaning of the words, the term "rice drying house" must mean "a structure where rice is dried." Under the express language of the policy, though damage to the grain tanks themselves may be covered, when the grain tanks are used to store rice that is being dried, they are a "rice drying house" and the contents of the tanks—the rice itself—is not covered.

## IV.

For the above reasons, the judgment of the district court is AFFIRMED.

---

1. Hebert Farms also argues that the provisions of the policy providing coverage for "Grain" on the insured premises are in direct conflict with the provision which states that the policy does not cover the contents of a rice drying house, and that the rice was not "contents" of a rice drying house at the time of the loss because the damage was not discovered until after the rice was removed from the bins. We do not find either of these arguments persuasive, but as these arguments were not raised before the district court, we decline to consider them. *See Offshore Drill-*

*ing Co. v. Gulf Copper & Mfg. Corp.*, 604 F.3d 221, 226 (5th Cir.2010).

2. The term "house" is defined as "a building in which something is housed." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 562 (10th ed.1997) (def. 2b). "To house," in turn, means "to encase, enclose, or shelter as if putting in a house." *Id.* (def. 2). Thus, we are unpersuaded that something cylindrical in shape cannot meet the definition of a "house."