FILED
United States Court of Appeals
Tenth Circuit

December 3, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

FUNDAMENTAL ADMINISTRATIVE
SERVICES, LLC; FUNDAMENTAL
CLINICAL CONSULTING, LLC,

        Plaintiffs-Appellants,

and

THI OF NEW MEXICO AT HOBBS
CENTER, LLC; THI OF NEW MEXICO,
LLC,

        Plaintiffs,

v.

LILLIE MAE PATTON, as the personal
representative of the Estate of Willie
George Patton, Sr., deceased,

        Defendant-Appellee.

No. 12-2014
(D.C. No. 2:11-CV-00537-LH-CG)
(D. N.M.)

FUNDAMENTAL ADMINISTRATIVE
SERVICES, LLC; FUNDAMENTAL
CLINICAL CONSULTING, LLC,

        Plaintiffs-Appellants,

and

THI OF NEW MEXICO AT VIDA
ENCANTADA, LLC; THI OF NEW
MEXICO, LLC,

        Plaintiffs,

v.

No. 12-2065
(D.C. No. 1:11-CV-00634-MV-RHS)
(D. N.M.)

MARY LOUISE LOVATO, as personal
representative for the wrongful death
estate of Guadalupe Duran, deceased,

Defendant-Appellee.

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

In these related appeals, plaintiffs-appellants Fundamental Administrative

Services, LLC ("FAS") and Fundamental Clinical Consulting, LLC ("FCC") appeal

from district court orders denying their motions to compel arbitration. Exercising

jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. *The* **Patton** *Case, No. 12-2014*

In appeal number 12-2014 ("the *Patton* case"), defendant-appellee Lillie Mae

Patton filed a state court action against FAS and FCC and others for negligence and

misrepresentation related to the care that her husband, Willie George Patton, received

at the Hobbs Center nursing home. Her complaint alleged that FAS was "engaged in

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the business of owning, operating, managing, and/or maintaining nursing homes and related healthcare facilities, including Hobbs Center." 12-2014 Aplt. App. at 46. It further alleged that nursing home facilities contracting with FAS paid FAS a management fee of 4% of net operating revenue for each such nursing home.

The complaint alleged that FCC was "engaged in the business of providing consulting services to nursing homes and related healthcare facilities, including Hobbs Center." *Id.* at 47. It further alleged that "FCC employs the Regional Director of Operations who is in charge of advising Hobbs Center about how to increase profits and how to meet budget expectations" and that FCC receives a management fee of 1% of the nursing homes' net operating revenue. *Id.*

When Mr. Patton was admitted to Hobbs Center, his step-daughter, Linda Barry, signed an arbitration agreement on his behalf. The agreement states:

> **RESIDENT/REPRESENTATIVE UNDERSTANDS THAT BY SIGNING THIS ARBITRATION AGREEMENT, HE/SHE IS WAIVING HIS/HER RIGHT TO HAVE CLAIMS, INCLUDING MALPRACTICE CLAIMS, HE/SHE MAY HAVE AGAINST THE HEALTH CARE CENTER (INCLUDING ITS PARENTS, AFFILIATES, AND SUBSDIARY COMPANIES, OWNERS, OFFICERS, DIRECTORS, MEDICAL DIRECTORS, EMPLOYEES, SUCCESSORS, ASSIGNS, AGENTS, ATTORNEY AND INSURERS) BROUGHT AS A LAWSUIT IN COURT BEFORE A JUDGE OR JURY.**

*Id.* at 42. An authorized agent of Hobbs Center also signed the agreement.

After Ms. Patton filed the state action, four of the defendants—FAS, FCC, THI of New Mexico at Hobbs Center, LLC ("Hobbs Center") and THI of New Mexico, LLC ("THI-NM")—filed a complaint and a motion in federal court to compel

arbitration.  In response, Ms. Patton asserted (1) that the only entity that could arguably compel arbitration was Hobbs Center; (2) Ms. Barry did not have the authority to bind Mr. Patton to the arbitration clause; and (3) the arbitration agreement was procedurally and substantively unconscionable.

The district court concluded that the arbitration clause was enforceable against Mr. Patton and the agreement was not procedurally or substantively unconscionable. The court further determined that Hobbs Center and THI-NM were covered by the arbitration agreement but that FAS and FCC were not covered.  The court therefore denied the motion to compel arbitration with respect to FAS and FCC and granted the motion with respect to Hobbs Center and THI-NM.

FAS and FCC filed a notice of appeal from the district court's decision. Ms. Patton did not file a cross-appeal.

**B.** *The* **Lovato** *Case, No. 12-2065*

In appeal number 12-2065 ("the *Lovato* case"), defendant-appellee Mary Louise Lovato filed a state court action against FAS and FCC and others for negligence, wrongful death, misrepresentation, and other state law claims related to the care her grandmother, Guadalupe Duran, received at the Vida Encantada nursing home.  When Ms. Duran was admitted to Vida Encantada, her daughter, Mary Ann Atencio, signed an arbitration agreement on her behalf.  An authorized agent of Vida Encantada also signed the agreement.  It stated:

> **RESIDENT/REPRESENTATIVE UNDERSTANDS THAT BY SIGNING THIS ARBITRATION AGREEMENT, HE/SHE IS**

**WAIVING HIS/HER RIGHT TO HAVE CLAIMS INCLUDING MALPRACTICE CLAIMS, HE/SHE MAY HAVE AGAINST THE HEALTH CARE CENTER (INCLUDING ITS AGENTS, EMPLOYEES, SERVANTS, PARENTS, SUBSIDIARIES, AND AFFILIATES) BROUGHT AS A LAWSUIT IN COURT BEFORE A JUDGE OR JURY.**

12-2065 Aplt. App. at 121.

After Ms. Lovato filed the state action, four of the defendants—FAS, FCC, THI of New Mexico at Vida Encantada, LLC ("Vida Encantada") and THI-NM— filed a complaint and a motion in federal court to compel arbitration. In response, Ms. Lovato asserted that the arbitration agreement could not be enforced because (1) it named an unavailable arbitrator; (2) it was procedurally unconscionable; (3) Ms. Duran's estate was not bound by the agreement; (4) the only entity that could arguably compel arbitration was Vida Encantada; and (5) plaintiffs had waived any right to compel arbitration because more than a year had passed since the state court suit was filed.

The district court concluded that the unavailability of the arbitrator did not render the agreement unenforceable, the agreement was not procedurally unconscionable, and the arbitration clause was enforceable against Ms. Duran's estate. Relying on the district court's analysis in the *Patton* case, the court determined that Vida Encantada and THI-NM were covered by the arbitration agreement but that FAS and FCC were not covered. The court therefore denied the motion to compel arbitration with respect to FAS and FCC and granted the motion with respect to Vida Encantada and THI-NM.

FAS and FCC filed a notice of appeal from the district court's decision. Ms. Lovato did not file a cross-appeal.

## II.    DISCUSSION

### A. *Legal Background*

We review de novo the district court's decisions denying FAS and FCC's motions to compel arbitration, applying the same legal standard employed by the district court. *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997). When considering a motion to compel arbitration, the court must give "'the opposing party the benefit of all reasonable doubts and inferences that may arise.'" *DeArmond v. Halliburton Energy Servs., Inc.,* 81 P.3d 573, 576 (N.M. Ct. App. 2003) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)).

Although the Federal Arbitration Act ("FAA") provides a procedure for parties to compel arbitration, *see* 9 U.S.C. § 4, "the existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon*, 126 F.3d at 1286-87. "The party attempting to compel arbitration carries the burden of demonstrating a valid arbitration agreement." *Corum v. Roswell Senior Living, LLC*, 248 P.3d 329, 331 (N.M. Ct. App. 2010). "We look to state law principles of contract formation to tell us whether an agreement to arbitrate has been reached." *Avedon,* 126 F.3d at 1287.

- 6 -

FAS and FCC are not signatories to the arbitration agreements at issue in the *Patton* and *Lovato* cases. Under New Mexico law, "[g]enerally, third parties who are not signatories to an arbitration agreement are not bound by the agreement and are not subject to, and cannot compel, arbitration." *Horanburg v. Felter*, 99 P.3d 685, 689 (N.M. Ct. App. 2004). FAS and FCC may, however, be entitled to enforce the agreements as third-party beneficiaries. *See, e.g., Fleet Mortg. Corp. v. Schuster*, 811 P.2d 81, 82 (N.M. 1991).

"Whether a party is a third-party beneficiary depends on if the parties to the contract intended to benefit the third party." *Id*. at 82-83. "The burden is on the person claiming to be a third-party beneficiary to show that the parties to the contract intended to benefit him." *Tarin's, Inc. v. Tinley*, 3 P.3d 680, 686 (N.M. Ct. App. 1999). "Such intent must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary." *Fleet Mortg.,* 811 P.2d at 83 (internal quotation marks omitted).

**B.** *District Court Decision*

In their motion to compel arbitration in the *Patton* case, FAS and FCC argued that, although they are not signatories to the agreement, "the Arbitration Agreement's plain language expressly covers [Ms. Patton's] causes of action against [them]." 12-2014 Aplt. App. at 99. They asserted that Mr. Patton "expressly **WAIVE[D] HIS[] RIGHT TO HAVE CLAIMS . . . HE[] MAY HAVE AGAINST [HOBBS] (INCLUDING ITS PARENTS, AFFILIATES . . . [AND] OWNERS . . . )**

- 7 -

**BROUGHT AS A LAWSUIT IN COURT BEFORE A JUDGE OR JURY."** *Id*. (internal quotation marks omitted).

In response, Ms. Patton argued that FAS and FCC had "failed to meet their threshold burden of establishing that an agreement to arbitrate existed" and that only Hobbs Center was bound by the agreement and able to compel arbitration. *Id*. at 153.

In reply, FAS and FCC again asserted that "the Arbitration Agreement itself says that these non-signatory Plaintiffs are parties to the Agreement." *Id*. at 174. In support, they cited the following passage: "This Agreement is between Hobbs [], [and] its *parents, affiliates* . . . . (emphasis added)." *Id*. (internal quotation marks omitted). They also quoted again from the bold language referenced above and emphasized that the agreement covered "***PARENTS, [AND] AFFILIATES* . . .**" *Id*. (internal quotation marks omitted). Finally, they stated: "As explained in the complaint [] ¶ 1, THI-NM is the sole member of Hobbs, and FAS and FCC are affiliates." *Id*. at 174-175.

The district court noted that the arbitration agreement does not define the terms "parents," "affiliates," or "owners." The court looked to a dictionary definition of those terms and then determined that neither FAS nor FCC was a parent company or owner of Hobbs Center. The court further determined that the relationship between FAS and FCC with Hobbs Center was too attenuated and indirect for the court to determine as a matter of law that they were affiliates. The court denied the

motion to compel, concluding that "FCC and FAS have not met their burden of demonstrating that they can compel arbitration under the agreement." *Id*. at 307.

**C.** *Analysis*

We first address the *Patton* appeal. Our analysis in that case applies to and controls our decision in the *Lovato* case.

On appeal, FAS and FCC do not challenge the district court's conclusion that they are not "parents" or "owners."[1] They assert, however, that the district court erred because they are "affiliates" of Hobbs Center. FAS and FCC also argue that they are covered by the arbitration agreement because they are "agents" of Hobbs Center.

1. *Affiliate Argument*

We agree with the district court that FAS and FCC did not meet their burden of showing that they could compel arbitration under the agreement because they are covered as "affiliates." To prevail on their motion to compel arbitration, FAS and FCC needed to show what the term "affiliates" means in the arbitration agreement and how their relationship with Hobbs Center meets that definition.

In their motion to compel, FAS and FCC asserted that the plain language of the agreement covered them and then quoted the "parents" and "affiliate" language

---

[1] Before the district court, FAS and FCC also argued that they could compel arbitration based on the doctrine of equitable estoppel. The district court disagreed. FAS and FCC do not challenge this ruling on appeal. *See* 12-2014 Aplt. Reply Brief at 5-6 ("The Opening Brief did not ask this Court to review the equitable estoppel issue[;] . . . [t]herefore, the equitable-estoppel issue is not before this Court.").

without offering any further explanation. *See id.* at 99. In their reply brief, they simply asserted that "FAS and FCC are affiliates." *Id.* at 175. The only explanation that they offered as to why they are "affiliates" was a citation to paragraph one of their complaint, *id.* at 174.

Paragraph one states:

Plaintiff Hobbs is a Delaware limited liability company. Plaintiff Hobbs' sole member is Plaintiff THI-NM, which is itself a Delaware limited liability company that has a single member, THI of Baltimore, Inc., a Delaware corporation with its principal place of business in Maryland. Plaintiff FCC is a Delaware limited liability company, the sole member of which also is THI of Baltimore, Inc. Thus for purposes of federal diversity jurisdiction, Plaintiff Hobbs, THI-NM and FCC are citizens of the States of Delaware and Maryland.

*Id.* at 6.

This paragraph identifies the citizenship of each of the corporate entities for diversity purposes. It does mention that FCC and THI-NM both have as their sole member THI of Baltimore. But it fails to explain how FCC is an "affiliate" of Hobbs Center. The term "affiliate" is not used or defined anywhere in this paragraph. Moreover, FAS is not mentioned, although the next paragraph does state that "FAS is a Delaware limited liability company" and "FAS's sole member is Fundamental Long-Term Care Holdings, LLC ("FLTCH")." *Id.* at 7. Nothing in the complaint or the motion to compel explains the relationship between FAS and Hobbs Center or explains how FAS is an "affiliate" of Hobbs Center.

With little help from FAS and FCC to decide this issue, the district court consulted the dictionary, using the following definition of "affiliate": "'[a] person,

- 10 -

organization, or establishment associated with another as a subordinate, subsidiary, *or member*.'" 12-2014 Aplt. App. at 289 (quoting The American Heritage Dictionary 29 (4th ed. 2006) (emphasis added)). Applying this definition to the allegations concerning the relationships among FAS, FCC, and Hobbs Center from the Patton's state court complaint, the district court could not determine as a matter of law that the parties contemplated FAS and FCC to be entities covered by the arbitration agreement.

FAS and FCC now assert that we should use the following definition of "affiliate": "a company effectively controlled by another or associated with others under common ownership or control." Webster's Third New Int'l Dictionary 35 (2002). Applying this definition, they contend that "[b]ecause Hobbs Center, [FAS] and [FCC] share a common non-managing parent company, it follows that [FAS] and [FCC] are 'affiliates' of Hobbs Center within the plain meaning of the arbitration agreement." Aplt. Br. at 15.

FAS and FCC raise this argument for the first time on appeal. In the district court, they did not offer any definition of "affiliates," nor did they offer this explanation of the relationship between the various entities.[2] We would normally

---

[2] The opening brief offered this additional explanation of the relationships amongst the various entities:

> Fundamental Long Term Care Holdings, LLC ("FLTCH") is the sole (non-managing) member of [FAS] and the sole shareholder of THI of Baltimore, Inc. ("THIB"), which is the sole (non-managing) member of [FCC]. THIB is also the sole (non-managing) member of [THI-NM],

(continued)

- 11 -

consider such an argument waived, but given the district court's *sua sponte* reliance on dictionary definitions, we will consider it. We conclude, however, that this argument does not demonstrate that the district court erred in denying the motion to compel arbitration.

Although a dictionary can be used to help find the common or ordinary definition of a term, *see, e.g., Battishill v. Farmers Alliance Insurance Company*, 127 P.3d 1111, 1113 (N.M. 2006), the dictionary definitions of "affiliate" are inconclusive in this case, *see Carmichael v. The Payment Ctr.*, Inc., 336 F.3d 636, 639-40 (7th Cir. 2003). FAS and FCC present no legal authority or evidence related to the contract to support their preferred definition. *See Farmington Police Officers Ass'n Commc'n Workers of Am. Local 7911 v. City of Farmington*, 137 P.3d 1204, 1210 (N.M. Ct. App. 2006) ("[W]here the meaning of a material contract term is in dispute a party seeking affirmative relief based upon its interpretation necessarily bears the burden of establishing that its interpretation controls.").[3]

---

which, in turn is the sole (non-managing) member of Hobbs Center. Thus, FLTCH is the direct non-managing parent company of [FAS], the indirect non-managing parent company of [FCC] and Hobbs Center, and the ultimate parent company of all three entities.

Aplt. Br. at 2 n.1.

[3]     Other dictionaries give varying definitions of "affiliate." *Compare* Webster's Ninth New Collegiate Dictionary 61 (1985) ("an affiliated person or organization") *with* Oxford English Dictionary, http://oed.com (last visited Nov. 6, 2012) ("A person or organization that is affiliated with a larger body; a member") *with* Black's Law Dictionary 67 (9th ed. 2009) ("A corporation that is related to another corporation by

(continued)

In sum, FAS and FCC bear the burden of showing that they are covered by the arbitration agreement, which requires them, as non-signatories, to demonstrate that they are third-party beneficiaries to the contract. In their motion to compel arbitration, FAS and FCC relied on a "plain language" argument and the conclusory assertion that they were "affiliates." They failed to explain what "affiliates" means in the agreement and how that term applies to their relationship with Hobbs Center. On appeal, they present their preferred dictionary definition without a persuasive reason why their definition should control. Viewing the motion to compel arbitration in the light most favorable to Ms. Patton, the non-moving party, we agree with the district court that FAS and FCC failed to meet "their burden of demonstrating that they can compel arbitration under the agreement." 12-2014 Aplt. App. at 307.

## 2. *Agent Argument*

We decline to consider FAS and FCC's second argument that they were Hobbs' "agents" because it was not raised before the district court. *See, e.g., Tele-Commc'ns, Inc. v. Comm'r*, 104 F.3d 1229, 1232 (10th Cir. 1997) ("Generally, an appellate court will not consider an issue raised for the first time on appeal."). Perhaps in anticipation of our position on this issue, FAS and FCC argue that it was the district court's burden to consider *sua sponte* whether they could fit within the

shareholdings or other means of control; a subsidiary, parent, or sibling corporation."). Some definitions focus on a membership relationship to be an affiliate, while others emphasize common ownership or control.

definition of "agent" or any of the other enumerated classes of beneficiaries. *See* 12-2014 Aplt. Br. at 21 n.4. We disagree.

As movants to compel arbitration, FAS and FCC had the burden of showing that they are third-party beneficiaries covered by the arbitration agreement. *See Corum*, 248 P.3d at 331 ("The party attempting to compel arbitration carries the burden of demonstrating a valid arbitration agreement."); *Tarin's, Inc.*, 3 P.3d at 686 ("The burden is on the person claiming to be a third-party beneficiary to show that the parties to the contract intended to benefit him."). The district court correctly noted that FAS and FCC focused their argument on the terms "parents," "affiliates," and "owners." *See* 12-2014 Aplt. App. at 99; 174-175. If FAS and FCC wanted the district court to consider whether they were "agents," or any other listed entity covered by the arbitration agreement, it was their burden to present that argument to the district court. We will not consider this argument for the first time on appeal.

### 3. Lovato *Appeal*

As for the *Lovato* appeal, the arbitration agreement in that case also stated that it covered "affiliates," and that term was not defined in the agreement. 12-2065 Aplt. App. at 121. FAS and FCC made the same conclusory "plain language" argument in their motion to compel as they did in the *Patton* case. *Compare* 12-2065 Aplt. App. at 47 *with* 12-2014 Aplt. App. at 99. Relying on the district court's analysis from the *Patton* case, *see* 12-2065 Aplt. App. at 304-305, the district court in *Lovato* concluded that "FCC and FAS have not met their burden of demonstrating that they

may compel arbitration under the Arbitration Agreement," *id*. at 314. FAS and FCC raise the same arguments on appeal that they raised in the *Patton* case. We therefore reach the same conclusion and affirm the district court's decision based on our analysis in the *Patton* case.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's judgments in appeal 12-2014 and in appeal 12-2065.[4]

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[4] Ms. Patton submitted a supplemental authority letter pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure. Attached to the letter was a copy of *Figueroa v. THI of N.M. at Casa Arena Blanca, LLC, et al.,* No. 30,477, slip op. (N.M. Ct. App. July 18, 2012), *cert. denied*, No. 33,762 (N.M. Oct. 3, 2012). The letter states that this supplemental authority was submitted "because it addresses the enforceability of the arbitration clause at issue in this case." The *Figueroa* court concluded that the arbitration clause, which was virtually identical to the one in this case, could not be enforced because it was unconscionable. If this Rule 28(j) letter was submitted to suggest that we should consider whether the arbitration clause is unconscionable, that issue is not properly before this court because Ms. Patton did not file a cross-appeal from the district court's decision. *See Trigalet v. Young*, 54 F.3d 645, 647 n.3 (10th Cir. 1995) (holding that court lacked jurisdiction to consider issue when party did not file a cross-appeal).