NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0044n.06
Case No. 22-3403

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 20, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| INTERNATIONAL CONFECTIONS COMPANY, LLC, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| Z CAPITAL GROUP, LLC; Z CAPITAL PARTNERS, LLC, | ) ) ) | OPINION |
| Defendants-Appellees. | ) ) | |

Before:  SUTTON, Chief Judge; CLAY and BUSH, Circuit Judges.

SUTTON, Chief Judge.  While under the control of a court-appointed receiver, International Confections Company sold its assets to Mrs. Fields Confections, an entity owned by Z Capital, a private equity firm.  The purchase agreement released Mrs. Fields Confections and its "affiliates" from liability.  International Confections later sued Z Capital.  The district court ruled that Z Capital was an affiliate of Mrs. Fields Confections, concluded that the release applied, and granted summary judgment in its favor.  We affirm.

James Zenni owns Z Capital Group, which in turn owns Z Capital Partners.  Through a series of intermediaries, Z Capital Partners controls Mrs. Fields Confections and Mrs. Fields Franchising.  Mrs. Fields companies, as few fail to know, sell cookies and other treats in malls and similar retail locations.

In 2013, Mrs. Fields Franchising entered into a licensing agreement with International Confections, permitting it to bake and sell Mrs. Fields' cookies. The deal did not deliver on all of the parties' expectations. A year later, Mrs. Fields Franchising ended the agreement. In the absence of the licensing agreement, International Confections faced insolvency. Its creditors convinced a Utah court to appoint a receiver. The receiver sold the company's assets to Mrs. Fields Confections (the sister company of Mrs. Fields Franchising). The asset purchase agreement released all claims against Mrs. Fields Confections "and its employees, officers, directors, members, affiliates, and agents." R.35-4 at 8.

After the original owner of International Confections regained control from the receiver, it sued Z Capital Group and Z Capital Partners for tortious interference with contract. The lawsuit alleged that the Z Capital defendants directed their subsidiary, Mrs. Fields Franchising, to unlawfully terminate the 2013 licensing agreement. The district court granted summary judgment for the two Z Capital defendants. Reasoning that "affiliate" has a well-understood meaning in the corporate context—"any entity that directly or indirectly controls, is controlled by, or is under common control with [another]"—the court concluded that the liability release covered the two Z Capital defendants as "affiliates" of Mrs. Fields Confections. R.38 at 17. International Confections appeals.

Even as the ownership structure implicated by this dispute is complex, the question of contract interpretation is not. The parties agree that, under a choice-of-law provision in the original contract, Utah law governs. *See Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008). They agree that conventional principles of contract interpretation apply. *Brady v. Park*, 445 P.3d 395, 407–08 (Utah 2019). And they agree that the asset purchase agreement released Mrs. Fields Confections and its "affiliates" from liability. That means that the district court properly granted

summary judgment for Z Capital Group and Z Capital Partners if, as a matter of Utah law, they count as "affiliates" of Mrs. Fields Confections. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

"Affiliate" has a straightforward meaning in corporate law. The term encompasses subordinate, superior, and sibling entities in a corporate hierarchy, so long as one ultimately owns or controls the other, or both are under common ownership or control. In the words of a legal dictionary, it means a "corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." *Affiliate*, Black's Law Dictionary 69 (10th ed. 2014). Even in the words of conventional English, still used in corporate law from time to time, it may mean (among other definitions) "a company effectively controlled by another or associated with others under common ownership or control." *Affiliate*, Webster's Third New Int'l Dictionary 35 (2002). The corporate context of the term remains the leading indicator here.

State and federal statutes define "affiliate" in similar ways in the corporate context. Utah's Business Corporations Act employs a similar definition. Utah Code Ann. § 16-10a-102(2) (Any "person that directly or indirectly through one or more intermediaries controls, or is controlled by, or is under common control with, the person specified."). So too does Delaware law and the law of each State in our circuit. *See* Del. Code Ann. tit. 8 § 203(c)(1); Ky. Rev. Stat. Ann. § 271B.12-200(1); Mich. Comp. Laws § 450.1776(1); Ohio Rev. Code Ann. § 1704.01(C)(1); Tenn. Code Ann. § 48-103-102(1). The same goes for SEC regulations, 17 C.F.R. § 230.405, and banking law, 12 U.S.C. § 1841(k). Even our own local rules, which require disclosure of litigants' publicly traded affiliates, use this definition. 6th Cir. R. 26(b)(1).

Precedent confirms this reading of the term. In *Pope v. Carl*, we adopted the same definition when interpreting a similar liability release under Kentucky law. 742 F. App'x 123, 127

(6th Cir. 2018); *see also Lucas v. Total Sec. Vision, Inc.*, No. 19-3973, 2021 WL 9569402, at *3 (6th Cir. Aug. 12, 2021) (interpreting settlement agreement). In interpreting the term in commercial agreements, our sister circuits have adopted equivalent approaches. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (holding that in the context of a membership agreement, the "plain and ordinary meaning of 'affiliate' [is] 'a company effectively controlled by another or associated with others under common ownership or control'"); *Bacardi Int'l Ltd. v. V. Suarez & Co.*, 719 F.3d 1, 11 (1st Cir. 2013) (distribution agreement); *Rothstein v. Am. Int'l Grp., Inc.*, 837 F.3d 195, 206 (2d Cir. 2016) (securities settlement agreement); *Mey v. DIRECTV, LLC*, 971 F.3d 284, 289–90 (4th Cir. 2020) (arbitration agreement); *Tex. Molecular Ltd. P'ship v. Am. Int'l Specialty Lines Ins. Co.*, 424 F. App'x 354, 357 (5th Cir. 2011) (insurance policy); *In re Motorola Sec. Litig.*, 644 F.3d 511, 518–19 (7th Cir. 2011) (securities settlement agreement); *Emory Univ., Inc. v. Neurocare, Inc.*, 985 F.3d 1337, 1343–46 (11th Cir. 2021) (indemnification agreement); *Securus Techs. Inc. v. Glob. Tel*Link Corp.*, 676 F. App'x 996, 999–1000 (Fed. Cir. 2017) (IP settlement agreement).

Measured by the most commonly used definition of affiliate, the release covers Z Capital Group and Z Capital Partners. In the first place, the contract employed "affiliates" in a distinctly corporate setting. The term defines parties released from liability by an asset purchase agreement, a commercial context through and through. The transaction involved two companies, and the release paired the term with one of them, Mrs. Fields Confections. The other words in the series— "employees, officers, directors, members, . . . and agents"—each evoke corporate connections and suggest its broad application. R.35-4 at 8.

In the second place, the broad corporate definition covers these entities. Both Z Capital entities are superior to Mrs. Fields Confections in the corporate hierarchy. And all three fall under

the "common ownership or control" of James Zenni, rendering Z Capital Group and Z Capital Partners covered "affiliates" of Mrs. Fields Confections.

International Confections counters that "affiliates" has a narrower scope—that it applies only to an entity "closely associated with another as a subsidiary, subordinate, or member." Appellant's Br. 11. That may well be one connotation in run-of-the-mine speech. But context is everything in interpretation. And the corporate context of the use of affiliate favors the broad reading. *Cf. State v. Hunt*, 906 P.2d 311, 313–14 (Utah 1995).

One other clue defeats this narrow reading. If it applied, the term "affiliates" would not do any work, as Mrs. Fields Confections lacks any subsidiaries. The narrow definition would not even cover Mrs. Fields Confections' sister company—Mrs. Fields Franchising—the entity that terminated the licensing agreement and thus most directly risked a lawsuit by International Confections.

*Fundamental Administrative Services, LLC v. Patton*, does not alter this conclusion. 504 F. App'x 694 (10th Cir. 2012). In that case, the Tenth Circuit found the term ambiguous but only because the defendants relied on "conclusory assertion[s]" and "failed to explain what 'affiliates' means in the agreement and how that term applies to [them]." *Id.* at 700–01. We have no such problem here. Many definitions and cases support the reading of the term we have adopted.

We affirm.

5