# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 6, 2011

No. 10-40722
Summary Calendar

Lyle W. Cayce
Clerk

TEXAS MOLECULAR LIMITED PARTNERSHIP; TM CORPUS CHRISTI
SERVICES LIMITED PARTNERSHIP; TM CORPUS CHRISTI SERVICES
MANAGEMENT, L.L.C; TM DEER PARK SERVICES MANAGEMENT,
L.L.C.; TM DEER PARK SERVICES, L.P.; TEXAS MOLECULAR
MANAGEMENT, L.L.C.,

                                        Plaintiffs - Appellants

v.

AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE
COMPANY; AMERICAN INTERNATIONAL GROUP INC., also known as
AIG Casualty Company,

                                        Defendants - Appellees

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 2:08-CV-7

Before DAVIS, SMITH, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

    Texas Molecular LP and its related entities filed suit against American

International Specialty Lines Insurance Company and AIG Domestic Claims

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-40722

seeking to enforce two insurance policies. The district court granted the defendants' motion for summary judgment, concluding that the relevant policies contained exclusions that excused the insurers from paying the insureds. The Texas Molecular plaintiffs appealed. We AFFIRM.

BACKGROUND

The plaintiffs are six separate but related entities that operate hazardous waste underground injection wells in Texas. The entities are Texas Molecular LP, Texas Molecular Management L.L.C., TM Corpus Christi Services LP, TM Corpus Christi Services, L.L.C., TM Deer Park Services, L.P., and TM Deer Park Management, L.L.C. (collectively the "Texas Molecular Entities"). All of the Texas Molecular Entities except TM Corpus Christi Services LP list the same address as their official address with the Texas Secretary of State.

The entities share a number of characteristics. Texas Molecular LP provides human resources and payroll services to all of the Texas Molecular Entities. TM Corpus Christi Services, L.L.C. serves as the general partner to TM Corpus Christi Services LP and TM Deer Park Management, L.L.C. is the general partner of TM Deer Park Services, L.P. Texas Molecular Management and Texas Molecular LP partially own TM Corpus Christi Services LP and TM Deer Park Services, L.P., and other entities have ownership shares in the limited partnerships. The entities also have several officers in common. For example, in 2006 three of the entities shared a president, vice president, and treasurer. Other people have served simultaneously as managers or employees of more than one of the Texas Molecular Entities.

At issue are insurance policies the Texas Molecular Entities purchased from American International Specialty Lines Insurance Company ("AISLIC") for which AIG Domestic Claims was the authorized claims handling agent. The first policy was a Comprehensive General Liability and Pollution Legal Liability Policy ("Primary Policy") and the second was a Commercial Umbrella Policy

2

("Umbrella Policy"). Under both policies, the Texas Molecular Entities were individually listed as "Named Insureds."

The Primary Policy provided that AISLIC would pay sums that the Texas Molecular Entities became obligated to pay for claims relating to "bodily injury which takes place while the person injured is on the insured property[.]" The Primary Policy, however, excluded coverage for claims "[a]rising from bodily injury to an employee of the insured or its parent, subsidiary, or affiliate arising out of and in the course of employment by the insured or its parent, subsidiary or affiliate."

The Umbrella Policy provided supplemental insurance above the policy limits of the Texas Molecular Entities' other insurance policies. The Umbrella Policy had another exclusion to the coverage at issue here. The policy did not apply to "[b]odily injury . . . arising out of the actual, alleged or threatened discharge, seepage, migration, release or escape of pollutants at any time[.]"

In 2006, two employees of TM Corpus Christi Services LP died when they were exposed to a lethal amount of hydrogen sulfide. The families of the deceased filed wrongful death and survival claims against the six Texas Molecular Entities, among other defendants. The Texas Molecular Entities requested coverage from AISLIC to defend against the wrongful death suits, which AISLIC accepted, subject to a reservation of the right to later rely on the policy exclusions.

AISLIC eventually denied coverage under the Primary Policy based on the exclusion to coverage for bodily injury to employees of the insured or its affiliates. It also denied coverage under the Umbrella Policy based on the pollution exclusion. The Texas Molecular Entities settled the wrongful death claims, and filed a breach of contract suit in state court against AISLIC to recover on their Umbrella and General Policies. AISLIC removed the case to federal court on the basis of diversity jurisdiction. The defendants filed for

summary judgment, arguing that they were not obligated to pay on either policy due to these two exclusions.  The district court determined that the exclusions barred coverage and granted the motion. The district court ordered the plaintiffs to pay the defendants' costs for defending the lawsuit and dismissed the claim that the insurers were negligent in declining to settle third-party claims within the policy limits.  The Texas Molecular Entities timely appealed.

## DISCUSSION

We review a district court's decision to grant a motion for summary judgment *de novo.  Offshore Drilling Co. v. Gulf Copper & Mfg. Corp.*, 604 F.3d 221, 225 (5th Cir. 2010).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When jurisdiction is based on diversity, we apply the law of the forum state.  *Holt v. State Farm Fire and Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010).  Absent a controlling state court opinion, we analyze how the highest state court would interpret state law.  *See Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009).

Insurance contracts are interpreted "according to settled rules of construction" applied to all written contracts.  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008).  Words in the policies, if not defined, are accorded their plain and ordinary meaning. *Certain Underwriters of Lloyds, London v. Law*, 570 F.3d 574, 577 (5th Cir. 2009). "Where, as here, the disputed provision is an exclusion, the insurer bears the burden of establishing that the exclusion applies." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010) (citation omitted).

*I. Primary Policy Coverage*

The Texas Molecular Entities argue the district court erred when it found the employee exclusion precluded coverage under the Primary Policy.  They

maintain the language relating to that exclusion "establishes that there must be an employment connection between the injured employee and the employer or its parent, subsidiary or affiliate for the exclusion to apply." Thus, because the two deceased workers worked only for TM Corpus Christi Services LP, they had no relationship with the other Texas Molecular Entities and the exclusion should not apply to them.[1]  They contend in the alternative that the defendants failed to meet their summary judgment burden to show that the exclusion applied. The Texas Molecular Entities argue they were separate businesses, and the defendants failed to show they were "affiliates" under the Primary Policy. These arguments fail.

The relevant exclusion in the Primary Policy is clear. It states AISLIC does not provide coverage for injuries to "an employee of the insured, or its parent, subsidiary, or affiliate" in the course of employment "by the insured or its parent, subsidiary or affiliate." The plain language of the policy does not require an "employment connection" between the injured employee and the insured for the exclusion to apply. Rather, the Primary Policy states that an entity may not apply the policy's coverage when the employee of its affiliate is injured in the course of employment with that affiliate.

Additionally, the defendants demonstrated that all of the Texas Molecular Entities were "affiliates." The Primary Policy does not define the term "affiliate"; therefore, we apply its "plain, ordinary, and generally accepted meaning . . . ." *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996) (citation omitted). One Texas court defined affiliate as a "'company effectively controlled by another or associated with others under common ownership or control.'" *Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*, 176

---

[1] There is no dispute that the Primary Policy exclusion precludes coverage for TM Corpus Christi Services LP.

No. 10-40722

S.W.3d 80, 88 (Tex. App.–Houston [1st Dist.] 2004, no pet.) (quoting Webster's Third New International Dictionary 35 (1971)).

The defendants presented evidence that showed the Texas Molecular Entities met this definition. Some of the Texas Molecular Entities owned shares of and controlled the other entities. They also demonstrated that several entities shared officers and that Texas Molecular LP provided administrative services for all the other entities. Further, the plaintiffs failed to argue to the district court that the entities were not affiliates. Arguments not made "before the district court are waived and will not be considered on appeal . . . ." *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009). Thus, the Texas Molecular Entities were affiliates. As affiliates, they were excluded from the Primary Policy's coverage as to the claims brought by the families of TM Corpus Christi Services LP's employees. Therefore, the district court did not err when it granted the defendants' motion for summary judgment on the Primary Policy.

## II. *Umbrella Policy Coverage*

The plaintiffs contend the district court mistakenly applied the exclusion in the Umbrella Policy that precludes recovery for bodily injuries. They argue that the Umbrella Policy uses the term "bodily injury" while their workers compensation policy specifically provides coverage for "bodily injury by accident" and "bodily injury by disease." They maintain the latter terms in the workers compensation policy have a distinct meaning from "bodily injury" and therefore, the Umbrella Policy does not exclude coverage for a bodily injury sustained in an accident.

This logic is unpersuasive. The Umbrella Policy excludes coverage for "bodily injury" caused by the escape of pollutants. A plain reading of this exclusion indicates it includes a broad category of bodily injuries, including those caused by accidents. The bodily injury in this case was caused by the escape of a pollutant, hydrogen sulfide. Therefore, the district court did not err in its

6

No. 10-40722

decision to grant the defendants' summary judgment motion on the Umbrella Policy.

The plaintiffs also argue that they should not be required to pay defense costs and the district court should not have dismissed the so-called *Stowers* claim that the insurers were negligent in declining to settle a third-party claim within the policy limits. *See* Kelly H. Thompson, Comment, *Bad Faith: Limiting Insurers' Extra-contractual Liability in Texas*, 41 Sw. L.J. 719, 722 (1987) (discussing *Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved)). This alleged error is based on the premise that the policies actually provided coverage. Having upheld the district court's holding to the contrary, we need not address these issues based on what we have determined to be a false premise.

AFFIRMED.