NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SECURUS TECHNOLOGIES INC.,**
*Plaintiff-Cross-Appellant*

**v.**

**GLOBAL TEL\*LINK CORPORATION,**
*Defendant-Appellant*

---

2016-1470, 2016-1506

---

Appeals from the United States District Court for the Northern District of Texas in No. 3:13-cv-03009-K, Judge Ed Kinkeade.

---

Decided: January 26, 2017

---

MARK STRACHAN, Sayles Werbner, P.C., Dallas, TX, argued for plaintiff-cross-appellant. Also represented by E. SAWYER NEELY, DARREN PATRICK NICHOLSON, RICHARD ALAN SAYLES; GRADY MICHAEL GRUBER, ANTHONY MAGEE, Gruber Hurst Elrod Johansen Hail Shank LLP, Dallas, TX; BRUCE SOSTEK, RICHARD L. WYNNE, JR., Thompson & Knight LLP, Dallas, TX.

JOHN CHRISTOPHER ROZENDAAL, Sterne Kessler Goldstein & Fox, PLLC, Washington, DC, argued for defend-

ant-appellant.  Also represented by WILLIAM H. MILLIKEN, Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC, Washington, DC.

———————

Before DYK, BRYSON, and REYNA, *Circuit Judges.*

BRYSON, *Circuit Judge.*

I

Securus Technologies, Inc., owns patents relating to the delivery of communications services to correctional facilities.  It has sued various entities for infringement of those patents.  One of the entities Securus sued was Public Communications Services, Inc. ("PCS").  That suit ended in 2009 with a settlement that included Securus's agreement not to sue "PCS or its affiliates" for "infringement of any Securus Patent" until September 18, 2014.

In 2010, Global Tel*Link Corporation ("GTL") acquired PCS through a stock purchase, and PCS became a wholly owned subsidiary of GTL.  Three years later, Securus brought an infringement action against GTL.  GTL invoked Securus's covenant not to sue PCS or its affiliates as an affirmative defense, asserting that it was an "affiliate" of PCS.  GTL also filed a counterclaim charging Securus with breach of contract, alleging that Securus had violated the covenant by suing GTL for patent infringement.  For relief on the counterclaim, GTL sought damages in the amount of the attorney fees it incurred in defending against the infringement claim.[1]

———————

[1]    GTL also sought a fee award for the attorney fees it incurred in prosecuting its breach of contract counterclaim.  GTL sought those fees under chapter 38 of the Texas Civil Practice and Remedies Code.  That fee request is not yet ripe for decision and is not part of this appeal.

Based on the covenant not to sue, GTL moved for summary judgment on Securus's infringement claim. The district court granted GTL's motion. The court agreed that GTL qualified as an affiliate of PCS and that the covenant therefore protected GTL from Securus's suit. Under Texas law, the court explained, "entities who are a subsidiary, parent, or sibling corporation . . . are all encompassed within the plain, ordinary, and generally accepted meaning of 'affiliate.'" Because GTL satisfied that definition, the court held that the covenant not to sue barred the infringement action against GTL.

For its part, Securus moved for summary judgment on GTL's counterclaim for breach of the covenant not to sue. Securus argued that it was entitled to summary judgment on GTL's breach of contract claim because GTL had not offered competent evidence of damages. In particular, Securus argued that GTL had not introduced any evidence that the attorney fees GTL incurred in the infringement action were reasonable and necessary. Securus also argued that under Texas law GTL was required to present expert testimony in support of its claim for attorney fees as damages for the breach of the covenant not to sue. Because GTL had not designated an expert to testify on the reasonableness and necessity of its fees, Securus argued that it was entitled to summary judgment on GTL's request for attorney fees as damages on its counterclaim.

The district court granted Securus's motion for summary judgment, holding that under Texas law GTL's claim for attorney fees as damages required expert testimony, or at least an attorney for GTL testifying as an expert. Because GTL had not timely designated an expert, the court held that GTL would not be able to satisfy that requirement and thus would not be able to prove attorney fee damages for breach of the covenant not to sue.

Securus has appealed from the district court's order holding that the covenant not to sue barred Securus from suing GTL for patent infringement. GTL has appealed from the district court's order holding that GTL did not properly support its claim for damages. We affirm both orders.

II

On Securus's appeal, we agree with the district court that the covenant not to sue that Securus entered into as part of the 2009 settlement agreement was applicable to GTL and that the covenant barred Securus from bringing a patent infringement action against GTL before 2014.

Securus acknowledges that GTL can claim the benefit of the 2009 covenant not to sue if GTL qualifies as an "affiliate" of PCS. Securus argues, however, that the district court erred in holding that GTL is an "affiliate" of PCS within the meaning of the covenant not to sue.

In the covenant, Securus agreed not to sue "on behalf of itself and its former and present affiliates, subsidiaries and parent corporations, successors and assigns." Securus points out that, by contrast with that sweeping language referring to the parties who were barred from bringing suit, the portion of the 2009 covenant referring to the parties that Securus agreed not to sue names only "PCS or its affiliates." Because the agreement refers to Securus's "affiliates, subsidiaries and parent corporations" as separate entities, Securus argues that the agreement's reference only to PCS's "affiliates" is a clear indication that the term "affiliate," as used in the covenant, does not include a parent corporation of PCS, such as GTL.

That textual argument is unpersuasive. It is not unusual for legal documents to use overlapping language in order to ensure against gaps in intended coverage. Overlapping terms are frequently found in documents such as

wills ("give, bequeath, and devise"), contracts of sale ("grant, bargain, sell, and convey"), and releases ("remise, release, and forever discharge"). That appears to be the role of the reference in the 2009 contract to Securus's covenant not to sue "on behalf of itself and its former and present affiliates, subsidiaries and parent corporations, successors and assigns."

The problem with Securus's argument is that if those terms were given non-overlapping meanings, the term "affiliate" would not include subsidiaries, since the term "subsidiaries" is separately set forth in the clause on which Securus relies. Yet Securus acknowledges that a "subsidiary" is a paradigmatic example of an "affiliate" under its narrow interpretation of that term. It is clear, therefore, that even under Securus's view of the meaning of "affiliate," the terms in the clause on which Securus relies must be regarded as overlapping.

Securus further contends that the plain, ordinary, and generally accepted meaning of "affiliate" does not include a corporate parent. According to Securus, the plain meaning of the term "affiliate," both in general and under Texas law, refers to a company "that is either subordinate to another or dependent on another through ownership or control," and that it does not include a parent corporation.

That argument does not stand up against a review of the authorities pertinent to the 2009 covenant. First, the term "affiliate" was defined in the contemporaneous edition of Black's Law Dictionary to mean "a subsidiary, parent or sibling corporation," or a corporation "related to another corporation by shareholdings or other means of control," a definition that clearly includes parent corporations. *Black's Law Dictionary* 67 (9th ed. 2009). When applying Texas law to interpret a contract, courts have looked to the definition in Black's Law Dictionary as setting forth the ordinary meaning of the term "affiliate." Thus, the court in *McLane Foodservice, Inc. v. Table Rock*

*Rests., L.L.C.*, 736 F.3d 375, 378 (5th Cir. 2013), held that the ordinary definition of "affiliate" under Texas law includes a parent corporation; *see also id.* at 378 n.3 ("Texas courts have cited Black's Law Dictionary when interpreting undefined terms in a contract.").

Texas authorities confirm that Texas law embraces that broad definition of "affiliate." The Texas Business Organizations Code, which GTL accurately describes as "the state's central repository of corporate law," defines "affiliate" as "a person who controls, is controlled by, or is under common control with another person." *See Funderburk Enters., LLC v. Cavern Disposal, Inc.*, No. A-09-CA-327, 2009 WL 3101064, at *5 (W.D. Tex. Sept. 22, 2009) (citing the Texas Business Organizations Code and Black's Law Dictionary as providing the ordinary meaning of "affiliate"). That definition clearly includes parent corporations such as GTL, which is under common control with its wholly owned subsidiary, PCS.

Texas state judges have applied that definition as well. *See Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*, 176 S.W.3d 80, 88 (Tex. App. 2004) (citing *Webster's Third New International Dictionary* 35 (1971) and defining "affiliate" to mean "a corporation that is related to another corporation by shareholdings or other means of control," and "a company effectively controlled by another or associated with others under common ownership or control"); *see also Texas Rice Land Partners, Ltd. v. Denbury Green Pipeline-Texas, LLC,* 381 S.W.3d 465, 467 (Tex. 2012) (Wainwright, J., concurring) (stating that an affiliate is "commonly understood" to include a parent corporation).

Federal courts interpreting Texas law have consistently reached the same conclusion: that under the general definition of "affiliate" in Texas law, parent corporations are "affiliates" of their subsidiaries. *See McLane Foodservice*, 736 F.3d at 378; *Texas Molecular Ltd. P'ship v. Am.*

*Int'l Specialty Lines Ins. Co.*, 424 F. App'x 354, 357 (5th Cir. 2011) (holding that all of the entities in question were affiliates under the applicable common-ownership definition, including corporate entities that "owned shares of and controlled the other entities"); *In re Heartland Payment Sys., Inc. v. Customer Data Sec. Breach Litig.*, C.A. No. H-10-271, 2011 WL 1232352, at *19 (S.D. Tex. Mar. 31, 2011) ("The ordinary  meaning of the term 'affiliate' in this context is 'a corporation that is related to another corporation by shareholdings or other means of control' or 'a subsidiary, parent or sibling corporation.'"); *Funderburk Enters.*, 2009 WL 3101064, at *5  (the "important factor" in determining if entities are affiliates "seems to be the existence of common ownership or control of the two entities"); *Magicon v. Weatherford Int'l, Inc.*, C.A. Nos. 4:08-cv-3639, 2009 WL 7868862, at *14 (S.D. Tex. Aug. 14, 2009) ("the ordinary meaning of 'affiliate' encompasses both an understanding of an affiliate as a subsidiary and as a related corporation regardless of how related"); *Adams v. Dell Computer Corp.*, No. Civ A C-06-089, 2006 WL 2670969, at *5-6 (S.D. Tex. Sept. 18, 2006) (applying same definition as "ordinary meaning" of "affiliate" where contract does not define the term).[2]

---

[2]    Securus argues (Br. 28) that although the Fifth Circuit in *McLane Foodservice* cited the definition of "affiliate" in Black's Law Dictionary, the court "did not adopt that definition as the 'plain, ordinary, and generally accepted meaning' of 'affiliate' or apply that definition in its decision."  In fact, it is plain from the cited passage of *McLane Foodservice* that the court did exactly that:  It determined that the "plain and ordinary meaning" of the term "affiliate" is found in Black's Law Dictionary, the place that a Texas state court would look for the definition of that term in the absence of a definition in the contract.  736 F.3d at 378 & n.3.  As for the decision in

The district court therefore correctly concluded that under both the general definition of the term "affiliate" and the applicable principles of Texas law, GTL, as the parent corporation of PCS, qualified as an "affiliate" of PCS for purposes of the 2009 covenant not to sue. The court therefore correctly held that Securus was contractually barred from bringing suit against GTL at the time it did.

## III

On GTL's appeal, we uphold the district court's ruling that GTL failed to establish an element essential to an award of attorney fees as damages for Securus's breach of the covenant not to sue.

## A

The district court held that GTL was entitled to damages for breach of the covenant not to sue, and that the damages would be based on the attorney fees incurred in defending the suit that was barred by the covenant. The court further held, however, that in order to establish its right to an award of attorney fees as damages, GTL was required to offer expert testimony, or at least testimony from an attorney designated as an expert, to prove that the fees incurred by GTL in defending against the patent infringement claim were reasonable and necessary.

---

*Texas Molecular*, Securus argues (Br. 26) that the Fifth Circuit's definition of "affiliate" as a company "effectively controlled or associated with others under common ownership or control" excludes parents. It does not. Both parents and subsidiaries are "associated" with one another "under common ownership or control." 424 F. App'x at 357. Securus's effort to distinguish *Magicon* (Br. 33-34), in which the court applied the same definition, fails on the same ground.

GTL argued to the district court that it was not necessary to use an expert to prove its entitlement to an award of attorney fees as damages. Rather, GTL argued, all that was required to prove attorney fees as damages in a case involving the breach of a covenant not to sue was to show that the attorney fees were the natural and foreseeable consequences of the breach. GTL argued that it did not need to prove that the fees were reasonable and necessary; it only needed to introduce the records of the fees incurred.

The district court disagreed. Under Texas law, the court held that when attorney fees are sought as actual damages in an action such as one for breach of a covenant not to sue, the claimant must show that the fees were reasonable and necessary. The court further held that expert testimony is needed to show that the fees are reasonable and necessary, because such knowledge is "outside the normal understanding of a lay person." Because GTL failed to designate an expert (or an attorney testifying as an expert) by the deadline for designating experts and making expert disclosures, the court granted summary judgment on that issue to Securus.

B

In this court, GTL is no longer pressing the argument that it is not required to prove that its attorney fees were reasonable and necessary. Nor is it arguing, as it did in the district court, that it could establish its right to an award of attorney fees simply by presenting the fee documents and calling a GTL representative to testify that GTL paid the fees. Instead, GTL appears to accept that under Texas law it was required to offer testimony from an attorney regarding the reasonableness and necessity of the fees it incurred in defending against Securus's in-

fringement claims.[3] GTL's claim on appeal is that Texas law does not require that the attorney who testifies as to the reasonableness and necessity of the fees sought as damages be designated as an expert. For that reason, GTL argues that it was not required to make the appropriate expert witness disclosures by the deadline for designating expert witnesses. GTL's appeal thus turns on whether Texas law requires expert testimony—either from an attorney or otherwise—on the issue of the reasonableness and necessity of the fees incurred by the party seeking a fee award as damages.[4]

Texas law on the issue before the district court is clear: When a party seeks an award of attorney fees as damages, it is required to introduce expert testimony, from an attorney or otherwise, to establish that the fees

---

[3]    In a footnote (Br. 19 n.35), GTL hedges its position on this point, stating that even though the Fifth Circuit has "assumed" that fees sought to be recovered as actual damages must be reasonable and necessary, "it is not in fact clear that the Texas Supreme Court would find that a party seeking attorneys' fees as actual damages is required to establish that the fees were 'reasonable and necessary' as opposed to merely foreseeable." GTL, however, cites no authority from the Texas Supreme Court supporting that contention, and the Texas and Fifth Circuit cases cited *infra* are clearly to the contrary.

[4]    At oral argument, GTL's counsel suggested that even if Texas law required the testimony of an attorney designated as an expert to prove attorney fees as damages, that requirement would not necessarily apply in a federal court proceeding, even though the claim for fees is a state law claim brought under the federal court's supplemental jurisdiction. GTL, however, did not make or develop that argument in its briefs in this court, so we do not address it here.

were reasonable and necessary. The Texas cases are unambiguous on the point.

First, contrary to GTL's argument below, the Texas courts that have recognized a right to seek attorney fees as damages in appropriate cases have required proof that the fees were reasonable and necessary. *See Turner v. Turner*, 385 S.W.2d 230, 234 (Tex. 1964); *Dixon Fin. Servs., Ltd. v. Chang*, 325 S.W.3d 668, 678 (Tex. App. 2010); *Lesikar v. Rappeport*, 33 S.W.3d 282, 307 (Tex. App. 2000); *Powell v. Narried*, 463 S.W.2d 43, 46 (Tex. App. 1971); *see also Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 490 (5th Cir. 2004).

Second, Texas courts have ordinarily required expert testimony to prove attorney fees, and when an attorney testifies that the attorney fees are reasonable and necessary, the Texas courts have held that the attorney testifies as an expert. *See E.F. Hutton & Co. v. Youngblood*, 741 S.W.2d 363, 364 (Tex. 1987); *Gulf Paving Co. v. Lofstedt*, 188 S.W.2d 155, 160-61 (Tex. 1945) ("estimates of . . . value made by attorneys who testified" is "opinion evidence of expert witnesses"); *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 830 (Tex. App. 2014) ("Texas law is clear that '[t]he issue of reasonableness and necessity of attorney's fees requires expert testimony.'"); *Phillips v. Phillips*, 296 S.W.3d 656, 671 (Tex. App. 2009) ("Expert testimony as to the reasonableness of the attorney's fees is required to support an award of attorney's fees."); *Twin City Fire Ins. Co. v. Vega-Garcia*, 223 S.W.3d 762, 770 (Tex. App. 2007) ("The issue of reasonableness and necessity of attorney's fees requires expert testimony."); *Lesikar*, 33 S.W.3d at 308 ("Generally, the issue of reasonableness and necessity of attorneys' fees requires expert testimony; an attorney testifies as to reasonableness, and the testifying attorney must be designated as an expert before he testifies."); *Cantu v. Moore*, 90 S.W.3d 821, 826 (Tex. App. 2002) ("Expert testimony is required to support an award of attorneys'

fees."); *Woolett v. Matyastik*, 23 S.W.3d 48, 52 (Tex. App. 2000) (same); *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 148 (Tex. App. 1986) (An affidavit from an attorney representing a party "is admissible in a summary judgment proceeding and is considered expert testimony.").

Third, the Texas cases that have addressed the issue have consistently held that a party who uses an expert— or an attorney testifying as an expert—to establish the reasonableness and necessity of attorney fees must identify the expert at the time required for designating experts generally. *See E.F. Hutton & Co.*, 741 S.W.2d at 364; *Woodhaven Partners*, 422 S.W.3d at 830 ("An attorney testifies as to reasonableness; the testifying attorney must be designated as an expert before he or she testifies."); *Lesikar*, 33 S.W.3d at 308 (same); *see also 15625 Fort Bend Ltd. v. Sentry Select Ins. Co.*, 991 F. Supp. 2d 932, 946 (S.D. Tex. 2014) ("the failure to properly and timely designate an expert witness on a fee award bars recovery of such fees under Texas law").

The last two points are dispositive of GTL's position before this court: GTL was required to designate an expert to testify in support of its claim for attorney fees as damages, and when it failed to timely designate an expert, it forfeited its right to an award of fees.

C

GTL does not seriously engage the Texas cases that stand for those three points. Instead, GTL principally relies on two federal cases that apply Texas law—a case from this court, *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306 (Fed. Cir. 2013), and a case from the Fifth Circuit, *American Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482 (5th Cir. 2004). GTL argues that those cases support its view of Texas law, and that they are binding authority on this court regardless of what the Texas state court decisions might say.

When exercising either diversity or supplemental jurisdiction, both the Fifth Circuit and this court must defer to authoritative state court decisions interpreting state law. *Felder v. Casey*, 487 U.S. 131, 151 (1988). For the reasons set forth below, we are persuaded that the Federal Circuit's decision in *Taurus* and the Fifth Circuit's decision in *American Home* do not conflict with the Texas state courts' interpretation of the relevant provisions of Texas law. We are therefore free to apply Texas law as announced by the Texas state courts.[5]

*Taurus* presented two discrete issues involving attorney fees and damages. First, the district court awarded attorney fees incurred in prosecuting a breach of warranty suit. That fee award was predicated on section 38.001 of the Texas Civil Practice and Remedies Code. Second, the court awarded damages in the amount of the attorney fees that the defendants had incurred in defending against a patent infringement action.

One of the issues in *Taurus* was whether expert testimony was necessary to support either of the two awards. As to the first award, the court concluded that expert testimony was not necessary to support the award under section 38.001 for the breach of contract action. As to the second award, the court found it unnecessary to decide

---

[5] Because we reject GTL's interpretation of *Taurus* and *American Home*, we do not have to address the question whether those cases correctly construe Texas law, as expressed in the state court decisions cited above, including several intermediate state appellate court decisions that post-date *Taurus* and *American Home*. *See Broussard v. S. Pac. Transp. Co.*, 665 F.2d 1387, 1389 (5th Cir. 1982) (one panel of a federal appellate court should follow a prior panel's interpretation of state law "absent a subsequent state court decision or statutory amendment which makes this Court's (prior) decision clearly wrong").

whether expert testimony was required to support the award of attorney fees as damages for the defense of the patent infringement action. 726 F.3d at 1342. Thus, while *Taurus* ruled on the need for expert testimony in a proceeding brought under Tex. Civ. Prac. & Rem. Code § 38.001, it did not address the issue before this court at all.[6]

*American Home* has some parallels with this case, but like *Taurus* it does not address the key questions at issue here. In particular, *American Home* does not address or decide whether, under Texas law, an expert or an attorney designated as an expert is needed to testify as to the necessity and reasonableness of attorney fees when those fees are sought as damages in a breach of contract action.

In *American Home*, a liability insurer, American Home Assurance Company ("AHAC"), declined coverage of its insured, United Space Alliance, LLC, ("United Space") and refused to defend United Space in a liability action brought by a third party. United Space sued AHAC for breach of the duty to defend under its liability policy. The jury held that AHAC had breached its duty to defend and awarded United Space (1) attorney fees as damages to compensate United Space for the cost of defending the third-party lawsuit and (2) an award of attorney fees

---

[6] Securus argues that *Taurus* is pertinent because, by treating fee awards under section 38.001 separately from damages awards for the cost of unjustified proceedings, the court departed from the rationale of the district court in this case, which ruled that expert testimony was required in both instances. Regardless of whether the district court was correct in its analysis of cases applying section 38.001, however, its holding as to Texas law regarding the proof of attorney fees as damages is consistent with the Texas authorities cited above and is not at odds with anything decided by this court in *Taurus*.

incurred in the coverage action that United Space brought to enforce AHAC's duty to defend. AHAC appealed, arguing that United Space's evidence did not support either verdict under Texas law.

As GTL did below in this case, United Space took the position that under Texas law it was not required to prove that the fees it incurred in the third-party action were reasonable and necessary; all that was required, according to United Space, was to show that the fees were the natural and foreseeable consequences of AHAC's actions. In light of AHAC's position, the district court granted United Space's motion in limine to prevent AHAC from raising the issue of the reasonableness of United Space's attorney fees. Accordingly, United Space did not offer expert testimony on the reasonableness and necessity of the fees and did not designate its attorney as an expert for that purpose. 378 F.3d at 490.

On appeal, the Fifth Circuit reversed. In the portion of the court's opinion that addressed the coverage action, the court analyzed the fee request under section 38.001. On that issue, the court remanded for further proceedings. The court noted that another provision of the same statute, Tex. Civ. Prac. & Rem. Code § 38.003, creates a rebuttable presumption that fees requested under section 38.001 are reasonable as long as those fees are shown to be "usual and customary." 378 F.3d at 492. The court held that because of the presumption of reasonableness in section 38.003, expert testimony was not required to support a claim for attorney's fees under section 38.001, since "[t]he requirement of a designated expert goes to the reasonableness of the fees requested." 378 F.3d at 493. Nonetheless, the court reversed because United Space's evidence did not even show that the fees were "usual and customary," the threshold necessary to trigger the presumption of reasonableness.

As in *Taurus*, the court in *American Home* dealt separately with the claim for attorney fees as damages. It held that under Texas law, "attorney's fees sought to be recovered as damages must be reasonable and necessary." 378 F.3d at 490. Because the jury had not been required to make such a finding, the court remanded for further proceedings on the damages issue.[7]

In a passage that GTL relies on, the court said the following:

> To show the reasonableness and necessity of attorney's fees incurred, Texas courts have generally held that a party seeking such fees must offer the testimony of a witness who has been designated as an expert, *See E.F. Hutton & Co. v. Youngblood,* 741 S.W.2d 363, 364 (Tex. 1987); *Lesikar,* 33 S.W.3d at 307, or at the very least, some testimony by the claimant's attorney that the fees being sought as damages are reasonable. *Gulf Paving Co. v. Lofstedt,* 144 Tex. 17, 188 S.W.2d 155, 161 (1945); *Nguyen Ngoc Giao v. Smith & Lamm, P.C.,* 714 S.W. 2d 144, 149 (Tex. App.-Houston [1st Dist.] 1986, no writ).

---

[7]    GTL conflates the discussion of attorney fees as damages and attorney fees sought under section 38.001. *See* Reply Br. 9 ("The *American Home* court *explicitly rejected* the argument that expert testimony of any kind was required to support an award of attorneys' fees under § 38.001."); Reply Br. 11 (citing *Budd v. Gay*, 846 S.W.2d 521, 524 (Tex. App. 1993), for the proposition that an attorney need not be designated as an expert to testify as to the reasonableness and necessity of fees, even though that case was brought under section 38.001). The decisions in *Taurus* and *American Home*, however, make clear that the two sources of recovery are doctrinally distinct, and the opinions treat them as such.

378 F.3d at 490.[8]

Based on that passage, GTL argues that Texas law does not require expert testimony on the issue of the reasonableness and necessity of a party's attorney fees, as long as it offers competent testimony from an attorney with regard to that issue. GTL argues that the *American Home* court must have intended to say that an attorney's testimony on reasonableness and necessity does not have to be that of an expert, since the court referred to the option of either presenting evidence from an expert, or "at the very least, some testimony by the claimant's attorney that the fees being sought as damages are reasonable." *American Home*, 378 F.3d at 490. Therefore, GTL argues, the district court in this case committed reversible error by holding that Securus was entitled to summary judgment on the attorney fee issue when GTL failed to designate an expert witness before the deadline for designating expert witnesses in the scheduling order.

In fact, neither that passage nor anything else in *American Home* stands for the proposition that Texas law does not require expert testimony to support a claim for attorney fees as damages in a breach of contract case. All that *American Home* decided with respect to the damages issue was that there was insufficient evidence that the attorney fees incurred by United Space were reasonable and necessary, and that the damages award had to be reversed as a result. The question whether the testimony of the claimant's attorney had to be treated as expert

---

[8]   GTL also relies on a similar statement by the court later in the opinion in which it states that on remand the district court should require that United Space "either offer the testimony of a designated expert, or testimony by its attorneys, as to why the attorney's fees requested are reasonable and necessary." 378 F.3d at 491.

testimony under Texas law was not before the court and was not decided.[9] The court's silence on whether the attorney's testimony had to be treated as expert testimony cannot be considered a holding that under Texas law an attorney who testifies as to the reasonableness and necessity of particular attorney fees need not be designated as an expert.[10]

---

[9] GTL argues that *American Home* stands for the proposition that an attorney need not be designated as an expert because no such designation occurred in that case; if the court had regarded such a designation as necessary, GTL argues, the court would simply have reversed the award of damages rather than remanding for further proceedings. The court, however, reversed the damages award because there was no evidence as to the reasonableness and necessity of United Space's attorney fees. The court did not discuss the question whether United Space should have designated its attorney as an expert or how the district court should address that issue if it arose on remand.

[10] There are two further indications that the *American Home* court did not intend to suggest that an attorney who testifies as to the reasonableness and necessity of attorney fees sought as damages does not need to be designated as an expert. First, the cases cited by the *American Home* court for the proposition that an attorney can provide such evidence, *Gulf Paving Co. v. Lofstedt*, 188 S.W.2d 155 (Tex. 1945), and *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W. 2d 144 (Tex. App. 1986), both expressly state that the testimony of an attorney on such an issue is considered expert testimony.

Second, as noted above, the *American Home* court stated that "[t]he requirement of a designated expert goes to the reasonableness of the fees requested." 378 F.3d at 493. Because the court held that a showing of reasona-

Thus, the Fifth Circuit's decision in *American Home* does not conflict with the consistent line of Texas cases (reinforced by Texas cases decided after *American Home*, such as *Woodhaven*, *Phillips*, and *Twin City*) holding that an attorney who testifies as to the reasonableness and necessity of attorney fees in a case in which fees are sought as damages testifies as an expert.  For that reason, we conclude that the district court in this case correctly held that GTL was required to disclose its expert witness—whether an attorney or otherwise—at the time for expert witness disclosures according to the scheduling order.  Because GTL failed to do so, the district court permissibly concluded that GTL failed to satisfy the requirement of showing that the fees it sought were reasonable and necessary.  We therefore uphold the district court's decision granting summary judgment to Securus on GTL's counterclaim for attorney fees as damages.

### AFFIRMED

Each party shall bear its own costs for this appeal.

---

bleness is required to prove attorney fees as damages (but not to establish entitlement to a fee award under section 38.001), that statement indicates that the court considered expert testimony to be needed under Texas law to prove the reasonableness of attorney fees as damages in a breach of contract action, where the presumption of reasonableness set forth in Tex. Civ. Prac. & Rem. Code § 38.003 is inapplicable.